JAMES DAL BON, SBN #157942
LAW OFFICE OF JAMES DAL BON
606 N. 1ST St.
SAN JOSE, CA 95112
(408) 466-5845

VICTORIA L. BOOKE, SBN #142518
BOOKE & AJLOUNY
606 N. 1ST St.
SAN JOSE, CA 95112
(408)286-7000

Attorneys for Plaintiffs

STACEY A. ZARTLER SBN # 160859
SV EMPLOYMENT LAW FIRM PC
160 Bovet Road, Suite 401
San Mateo, CA  94402
(650)265-0221

Attorneys for Defendants Vito Ozuna Food Corporation and Severo C. Ozuna

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODRIGO CAMILO, ALVARO CAMILO, RICARDO SANCHEZ, JOSE MANUEL LOPEZ AND PUTATIVE PLAINTIFFS,<br><br>    Plaintiffs,<br><br>    vs.<br><br>DON VITO OZUNA FOOD CORPORATION AND SEVERO OZUNA<br>    Defendants. | Case No.  18:CV-02842 VKD<br><br>**NOTICE OF MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION, MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF**<br><br>**DATE: MARCH 19, 2019**<br><br>**TIME: 10:00 AM**<br><br>**COURTROOM 2 FIFTH FLOOR** |

1    NOTICE IS HEREBY GIVEN that on March 19 2019 at 10:00am ., or as soon thereafter

2    as the matter may be heard, in Courtroom 3,  Floor, of the United States District Court for

3    the Northern District of California, San Jose Courthouse, located at 280 South 1st Street, San

4    Jose, California 95113, before the Honorable Virginia DeMarchi, Plaintiffs as individuals and

5    on behalf of all others similarly situated, will and hereby does move this Court for entry of

6    an Order pursuant to Fed. R. Civ. Proc. 23(e) and 29 U.S.C. § 216(b):

7

8

9

10    February 12, 2019

11                                                        LAW OFFICES OF JAMES DAL BON

12

13                                                        *James Dal Bon*

14                                                        James Dal Bon

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

INTRODUCTION   p. 4

STATEMENT OF FACTS  p. 7

THE STIPULATED SETTLEMENT   p9

NOTICE PROCEDURE          p11

THE COURT IS REQUIRED TO EVALUATE THE SETTLEMENT FOR FAIRNESS UNDER RULE 23 AND THE FSLA       p11

THE COURT SHOULD PRECERTIFY THE SETTLEMENT AS FAIR IN UNDER RULE 23 AND THE FSLA         p13

THE COURT SHOULD GRANT CONDITIONAL CERTIFICATION OF THE RULE   p18

THE COURT SHOULD CONDITIONALLY CERTIFY THE COLLECTIVE ACTION UNDER THE FSLA       p01

THE ATTORNEY'S FEES REQUESTED ARE REASONABLE       p 21

THE NOTICE GIVEN THE CLASS IS ADEQUATE             p 22

1

<u>TABLE OF AUTHORITIES</u>

2

3    Kempen v. Matheson Tri-Gas, Inc., No. 15-cv660-HSG, 2016 WL 4073336, at* 4 (N.D. Cal.

4    Aug. 1, 2016) -- p11

5    Dunn v. Teachers Ins. & Annuity Assoc. of Am., No. 13-cv-5456-HSG, 2016 WL 153266, at *3

6    (N.D. Cal. Jan. 13, 2016.    P.  11

7    Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 602-07 (E.D. Cal. 2015) - p 11, 12

8    <u>Thompson v. Costco Wholesale Corp.</u>, No. 14-CV-2778-CAB-WVG, 2017 WL 1957552, at *3–4

9    (S.D. Cal. May 11, 2017).  P 12

10   Genesis Healthcare Corp. v. Symczyk. 569 U.S. 66, 75, 133 S. Ct. 1523, 1530, 185 L. Ed. 2d

11   636 (2013) – p12

12   Otey v. CrowdFlower, Inc., No. 12-cv-05524-JST, 2015 WL 4076620 (N.D.Cal. July 2, 2015)-p13

13   Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1172-73 (S.D. Cal. 2016) ---p143

14   Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015) --p13

15   Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003) -pp 13, 15, 18

16   Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) - pp 13, 18
     Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291 (9th Cir. 1992) p13
17

18   Acosta v. Frito-Lay. Inc., No. 15-CV-02128-JSC, 2018 WL 2088278, at *4 (N.D. Cal. May 4,

19   2018) -p15

20
     In re Tableware Antitrust Litig., 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). -p15
21

22   Harris v. Vector Mktg. Corp., No. 08–cv–05198 EMC, 2011 WL 1627973, at *7 (N.D.Cal. Apr.

23   29, 2011) p14

24   Hesse v. Sprint Corp., 598 F.3d 581,590 (9th Cir.2010) -p14

25   Custom LED, LLC v. eBay, Inc, No. 12-cv-00350 JST, 2013 WL 6114379, at* 4, *7 (N.D.Cal. Nov.

26   20, 2013) - p14, 15

27   Vasquez v. Coast Valley Roofing, Inc., 670 F.Supp.2d m4, 1125 (E.D.Cal.2009) -p15

28   Churchill Village v. Gen. Elec., 36i F.3d 566, 575 (9th Cir.2004) -p15

Ansari v. New York Univ. (SD NY 1998) 179 FRD 112,114 p 18

Consolidated Rail Corp. v. Town of Hyde Park (2nd Cir. 1995) 47 F3d 473 -p 19

Wal-Mart Stores. Inc. v. Dukes fa011) 564 US 338. 350. 131 S.Ct. 2541-p 19

General Tel. Co. of Southwest v. Falcon, supra, 457 US at 156, p 19

Wolin v. Jaguar Land Rover North America, LLC (9th Cir. 2010) 617 F3d 1168 -- p 20

Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) 20

Hill v. RL Carriers, Inc., 690 F.Supp.2d 1001, (N.D.Cal.2010) - p20

 Boeing Co. v. Van Gernert, 444 U.S. 472,478 (1980) p-20

Central R.R. & Banking Co. v. Pettus, 113 U.S. 116 (1885) p 20

Glass v. UBS Financial Services, Inc., 2007 **WL 221862** (N.D. Cal. Jan. 26, 2007) p 21

Churchill Village, L.L.C. v. General Electric, 361 F.3d 566, 575 (9th Cir. 2004); p 21

White v. Nat'l Football League, 41 F.3d 402, 408 (8th Cir. 1994). P 21

Statutes

Fed Rule of Civ. Proc. 23 --pp 11, 12, 13, 18.

29 u.s.c. § 216 - pp 12, 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This is a class action complaint filed on behalf of nonexempt employees against Severo Ozuna and Don Vito Ozuna Food Corporation.  Severo Ozuna owns Don Vito Ozuna Food Corporation, a small tortilla factory in Santa Clara County. (Defendant Severo Ozuna and Don Vito Ozuna Food Corporation shall hereby be collectively known as Defendants) During the class period, May 14, 2014 through March 19, 2019, the Defendants employed Rodrigo Camilo, Alvaro Camilo, Ricardo Sanchez, and Jose Manuel Lopez (hereinafter collectively known as "Plaintiffs") as non-exempt tortilla makers in their factory.

On May 14, 2018 Plaintiffs filed a Rule 23 class action complaint alleging that Defendants failed to pay them for all regular and overtime wages.   Specifically, The Plaintiffs alleged the following California State causes of action for the Rule 23 Class Action: Failure to Pay Overtime and Regular Wages under Cal. Lab. Code Sections 510 and 1194, Failure to Pay Wages at the End of Employment pursuant to Cal. Labor Code Section 203, Failure to Provide Rest and Meal Period Breaks under Cal Labor Code Section 226.7 and Failure to Provide Accurate Pay Stubs Cal. Lab. Code Section 226.7.  The Plaintiffs also filed a claim for Restitution of overtime wages under Cal. Business and Professions Code Section 17200 that is subsumed unto the Rule 23 Class.  Finally the Plaintiffs filed a collective action for unpaid overtime under The Fair Labor Standards Act 29 USC Sections 207.2, 216(b) and 255(a).

Following the filing of the complaint, Plaintiffs' counsel conducted a thorough

investigation into the facts of the lawsuit, including extensive investigation, interviews, discovery and exchange of information and documents. The investigation included review of thousands of pages relevant documents, including written policies and procedures, handbooks, time records, and payroll records.  Class Counsel further investigated the facts alleged in the Complaint by conducting multiple interviews of named plaintiffs and potential class members.

 The Parties participated in a full-day mediation on December 12, 2018 before respected mediator, Hon. George Hernandez (Ret).  After a full day of arms-length negotiations assisted by Judge Hernandez, the Parties agreed to the settlement in general terms.  All parties signed a Memorandum of Understanding, containing general terms that the Parties have specified Exhibit A and elaborated upon in the Stipulated Settlement and a Notice of Claim Exhibit B.

At the mediation, the parties agreed that the facts uncovered by the discovery in this case warranted creating one Rule 23 class between the period of  May 14, 2018 and March 19, 2019.  The collective action under the FSLA has been broken by the period of time the Department of Labor already forced the Defendants to pay back wages to their non-exempt employees.   Thus the FSLA opt-in period will not cover November 16, 2014 through November 22, 2016 when the Department of Labor had jurisdiction over the claims

STATEMENT OF FACTS

The Defendants employed the four named plaintiffs and class representatives, Rodrigo Camilo, Alvaro Camilo, Ricardo G. Sanchez and Jose Manuel Lopez as non-exempt tortilla makers. Plaintiffs are all represented by James Dal Bon of the Law Offices of James Dal Bon

and Victoria Booke of Booke and Ajlouny.  Defendants employed Plaintiff Rodrigo

Camilo from 2010 to March 13, 2017; Alvaro Camilo, from 2010 to July 23, 2017; Jose Manuel;

from 2009 to July 23, 2017; and Ricardo Gomez Sanchez, from 2010 to March 8, 2016.  The

Stacey Zartler of SV Employment Law Firm represents Defendants Servero C. Ozuna, an

individual and Don Vito Ozuna Food Corporation, a California corporation.

The Plaintiffs based their case on the following allegations:

Defendants regularly deducted or "shaved" work hours from the Plaintiffs' paychecks

in this manner so that the Defendants did not pay the Plaintiffs for all the overtime and

regular hours they actually worked for the Defendants. Not only did the Defendants fail to

pay overtime when they shaved time from the Plaintiffs time cards but they also failed to

minimum wages for the shaved time.  For example, the Defendants required they pick up

their paychecks on Saturday, their days off.  However the Defendants did not pay the

Plaintiffs for the time they spent coming to the office to obtain their pay.

Due to the time shaving, Defendants provided the Plaintiffs with paystubs that did

reflect the hours they worked in accurate manner.   The paystubs did not include the hours

the Defendants shaved from the time cards of the Plaintiffs.  Plaintiffs could not look at

their time cards and determine whether the Defendants paid them for all their work hours.

CLASS SIZE

Defendants report the approximate class size as follows:

1)        Total putative class members –approximately app 68

2)        Current putative class members – 34

3)        Former putative class members – app 34

4)      Workweeks – approximately 4780 (Total)

5)      Wage statements issued 82


THE STIPULATED SETTLEMENT

The Overall Sum

After a full day of mediation the Parties agreed to settle this case for $375,000.00 to be paid by Defendants.  The Settlement Sum includes attorney's fees, costs and expenses directly related to the case.  The Settlement Administration costs are estimated to be $15,000. See Ex C  Subject to Court approval, Class Representatives Rodrigo Camilo, Alvaro Camilo, Ricardo Sanchez, and Jose Manuel Lopez shall receive Service Awards of $5000 each.   Subject to Court approval, Class Counsel will be paid up to $112,500 for attorneys' fees, and an additional amount for reasonable litigation costs not to exceed $10,000.00. Class Counsel shall file the motion for an award of attorneys' fees at least sixty days prior to the Final Fairness and Approval Hearing so that Class Members shall have adequate time to decide whether to object to and / or oppose the request for attorneys' fees.

The members of the class shall recover damages based upon the number of work weeks they worked during the class period.    The parties reserved an estimated $145,725.00 or 67% of the net settlement funds for the Rule 23 class members. If there are 4780 work weeks between these dates then the class members will receive approximately $30 per work week.  The estimated balance of  $71,775.00 or 33% of the net settlement funds is reserved for the FSLA opt-in collective action.

The settlement shall be paid in two installments.  The first for $200,000 shall be paid

8

on July 1, 2019 or thirty days after the final approval whichever is shorter.  The second payment of 175, 000 shall be made on May 1, 2020.  Any checks left uncashed 180 days after the first payment shall be paid to the class members that cashed their checks for the first payment.  Any uncashed checks 180 days after the second payment shall cy pres to the Katharine & George Alexander Community Law Center a nonprofit that assists low wage earners with their employment issues.

Members of the Rule 23 classes for violations of California State law who do not opt-out shall automatically receive their portion of the money reserved for them based upon the number of weeks they worked.  Of this amount 20% (twenty percent) shall represent wages; 40% forty percent shall represent interest, and 40% forty percent shall represent penalties. Members of the collective action under the FSLA will have to opt-in to receive their money. The entire sum received under the FSLA shall be considered taxable wages.

A.  Opt-out Opt-In Procedure

All Rule 23 Class Members will be given an opportunity to opt-out of the class, including an opportunity to object to the settlement as a whole and the proposed attorney's fees.  The employer shall be relieved of liability for all wage and hour causes action related to those pled in the class with the exception of the FSLA claims. Every class member shall also be given the opportunity to opt-into the settlement of the collective action under the FSLA.  Only those members that opt-in to the collective action shall settle their FSLA claim.

Distribution of the Settlement Funds

The Individual Settlement Amounts for each Participating Class Member will be calculated by the Settlement Administrator as follows:  Each Participating Class Member

shall be entitled to receive a pro rata portion of the Net Settlement Fund based upon his or her respective number of work weeks during the Class Period of May 14, 2014 to March 1, 2019.  This amount shall be determined by dividing the Net Settlement Fund by the total number work weeks worked by each of the participating  Class Members from May 14, 2014 to March 1, 2019.  The resulting amount will be the dollar amount per work week which each of the class members .

Each Participating Class Member shall receive 67% of his or her Individual Settlement Amount so long as he or she does not opt out of the Settlement pursuant to Rule 23.  Each Participating Class Member shall receive an additional 33% of his or her Individual Settlement Amount if he or she consents to join the FLSA collective action in writing by returning the Consent To Join Form.  Since the Department of Labor settled FSLA cases from November 16, 2014 through November 22, 2016  that time period will be carved out of the FSLA Settlement shall receive the Consent to Join Form.  The Individual Settlement Amounts of any OT Class Members who opt out of the Settlement and / or decline to join the FLSA collective action ("unclaimed funds") will be allocated pro rata to the Participating Class Members.

NOTICE PROCEDURE

Within ten (10) calendar days of receipt of the Class List from Defendants, CPT Group shall mail the Class Notice and the Consent to Join Form by first-class United States mail, postage prepaid, to the last known address of each Class Member of each Class.  CPT Group will send the forms in Spanish and English.  The Class Notice will include the number of work weeks and an estimate of the amount to be awarded to each class member. The Class

Administrator shall research all addresses of the members no longer employed by the Defendants and skip trace the addresses of those members whose notices are returned as undeliverable. On the thirtieth day the Class Administrator shall send a reminder notice to the class members that the deadline is approaching.

Class members will have a total of sixty days to return the consent to join forms. There is also an appeal process for approval of a late claim form and the number of workweeks on the claim form. Class members will have a total of 45 days to exclude themselves from the settlement. Class members will also be notified of their right to object to the settlement and make their objections known at the final settlement hearing. CPT Group, Class Counsel or Defense

Counsel will also put up a website with downloadable forms during this time period.

Argument

THE COURT IS REQUIRED TO EVALUATE THE SETTLEMENT FOR FAIRNESS UNDER RULE 23 AND THE FSLA

The Plaintiffs in this case filed a hybrid federal and state wage and hour case against the Defendants for failure to pay overtime wages at their tortilla factory. Federal law requires the parties to obtain the approval of the court to finalize the settlement of a collective action under the FSLA and a class action under Rule 23. Kempen v. Matheson Tri-Gas, Inc., No. 15-cv660-HSG, 2016 WL 4073336, at *4 (N.D. Cal. Aug. 1, 2016); see also Dunn v. Teachers Ins. & Annuity Assoc. of Am., No. 13-cv-5456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016) Fed Rule of Civ. Proc. 23(e). The procedure for approving a FSLA collective action and a Rule 23 class action are identical. The court approves settlements under Rule 23 and the FSLA in two stages. See generally Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 602-07 (E.D.

11

Cal. 2015); Thompson v. Costco Wholesale Corp., No. 14-CV-2778-CAB-WVG, 2017 WL 1957552, at *3–4 (S.D. Cal. May 11, 2017).  In the first stage the courts preapprove the substantive terms of the settlement and the procedure for obtaining its final approval in the second stage.  Id.

The effect of preapproval of a collective action under the FSLA is different than the effect of precertification of a putative class under Rule 23. A putative class acquires an independent legal status once it is certified under Rule 23. All parties fitting the class definition are effectively joined to the putative class unless they file a written notice "opting out" according to Rule 23.  Under the FLSA, by contrast, "conditional certification" does not produce a class with an independent legal status or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees who in turn become parties to a collective action only by filing written consent "opting into" the case Title 26 § 216(b). Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75, 133 S. Ct. 1523, 1530, 185 L. Ed. 2d 636 (2013). Precertification of a Rule 23 putative class creates a well-defined independent legal entity that one must opt-out in order to avoid being bound by the settlement while Section 216 (b) simply gives one an opportunity benefit from the settlement by opting into its terms. Id.

In this case the court is first required to evaluate the fairness of the settlement.  If the court determines the settlement is fair then the Rule 23 class will gain an independent legal status and participants will be required to opt out of the settlement to not be bound by its terms.  For the FSLA claims,  class members will be given the opportunity to settle the collective action and will only be bound by its terms if they opt in.  If the court decides the

settlement is fair under Rule 23 it will be considered fair under the less stringent standards of the FSLA.  In determining fairness under the FSLA, "many courts begin with the well-established criteria for assessing whether a class action settlement is "fair, reasonable, adequate" under Fed.R.Civ.P. 23(e), and reason by analogy to the FLSA context. See, Otey v. CrowdFlower, Inc., No. 12–cv–05524–JST, 2015 WL 4076620 (N.D. Cal. July 2, 2015) Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1172–73 (S.D. Cal. 2016)

THE COURT SHOULD PRECERTIFY THE SETTLEMENT AS FAIR IN UNDER RULE 23 AND THE FSLA

The Ninth Circuit maintains a strong judicial policy that favors settlement of class action settlements." Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015)   Fronda v. Staffmark Holdings, Inc., No. 15-CV-02315-MEJ, 2017 WL 5665671, at *5 (N.D. Cal. Nov. 27, 2017)  When the parties to a class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). In the first stage of the approval process the Court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Acosta v. Frito-Lay, Inc., No. 15-CV-02128-JSC, 2018 WL 2088278, at *4 (N.D. Cal. May 4, 2018) Settlements that are reached as a result of arm's-length bargaining between experienced and well-informed counsel, after thorough investigation, are entitled to a presumption of fairness. See Staton v. Boeing, 327 F.3d 938, 960 (9th Cir. 2003); Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291 (9th Cir. 1992).

All of the factors giving rise to a presumption of fairness exist in this case. The proposed settlement was the product of arm's-length, non-collusive negotiations, overseen by a mediator ; the class is represented by experienced counsel (id.); and the parties have conducted sufficient discovery (id.). Thus, the settlement is presumed to be fair.

"The Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." Harris v. Vector Mktg. Corp., No. 08–cv–05198 EMC, 2011 WL 1627973, at *7 (N.D.Cal. Apr. 29, 2011); In re Tableware Antitrust Litig., 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).

In this case the settlement was the product of serious informed non-collusive negotiations.  Plaintiff's counsel evaluated over ten thousand pages of documents, conducted extensive interviews of the plaintiffs e before going to mediation.  The parties conducted a full day of mediation in front of an experienced mediator.

The settlement has no obvious deficiencies.  In this case the settlement releases the Defendants from liability regarding their compensation practices encompassed in the state wage and hour laws.  See Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir.2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks and citations

omitted); Custom LED, LLC v. eBay, Inc, No. 12–cv–00350 JST, 2013 WL 6114379, at *4, *7

(N.D. Cal. Nov. 20, 2013).  The settlement only releases claim pertaining to wage and hour

laws, which are based upon the same "factual predicate" as the underlying claims in the

settled class action.

     The settlement gives no member or group preferential treatment.  Each member will

receive their pro rata share of the settlement based upon the number weeks they worked for

the defendant.  It was not designed to favor any one group over another. The service awards

of $5000 for each of the four participating plaintiffs are modest.  Plaintiffs  all missed a day

and a half from work  preparing and participating in the mediation.  Plaintiffs missed several

days from work visiting counsel's office on numerous occasions to answer questions and sign

paperwork. settlement unfair, The "Ninth Circuit has recognized that service awards to

named plaintiffs in a class action are permissible and do not render a settlement unfair or

unreasonable." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir.2003).

     The settlement falls within the range of possible approval.   "To evaluate the range of

possible approval criterion, which focuses on substantive fairness and adequacy, courts

primarily consider plaintiff's expected recovery balanced against the value of the settlement

offer." Vasquez v. Coast Valley Roofing, Inc., 670 F.Supp.2d 1114, 1125 (E.D.Cal.2009)). The

court evaluates : "[1] the strength of plaintiff's case; [2] the risk, expense, complexity, and

likely duration of further litigation; [3] the risk of maintaining class action status throughout

the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the

stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a

governmental participant; and [8] the reaction of the class members to the proposed

settlement." Churchill Village v. Gen. Elec., 361 F.3d 566, 575 (9th Cir.2004). The court comes "the value of the settlement against the expected recovery at trial" by estimating "the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount." Id. at *11 (internal quotation marks omitted). The Court will address first the value of the settlement.

There are approximately 68 members of the class. For purposes of settlement the overtime class starts on May 14, 2014 to March 1, 2019. The FSLA also starts on May 14, 2014 to March 1, 2019. However there is a carve out for the FLSA claim from November 16, 2014 through November 22, 2016 when the Department of Labor settled FSLA claim for the employees.

Assuming that no class member opts out and every class member opts in, under the settlement, members of the Class will receive on average about $30 per week for every week they worked. Most of the workers earned between $9 to $11 per hour. Since they were paid at the regular rate of pay for overtime hours, they will be paid for about six hours of overtime at $10.00 an hour, the overtime differential for the minimum wage of $10 per hour. As usually happens with most wage and hour class actions, some employees who worked no overtime will receive money and some who worked more will receive less than they worked.

The Defendants dispute this part of the case. A review of the time records actually demonstrates the Defendants had the Plaintiffs punch in and out for their ten minute breaks. The Defendants would then add the time punched out for the ten minute breaks back into the time cards. Thus the Plaintiffs did not have a strong claim for meal or rest period violations. The Plaintiffs do have a cause of action for overtime wages, the paystub and 203 penalty.

Defendant had an unusual method of keeping track of his employees' time.  A close look at his method of tracking time revealed it was a ruse to pay his employees at the regular rate for overtime hours.  For  in Exhibit "D" a sample paystub of Rodrigo Camilo dated for the pay period December 28, 2015 to January 10, 2016 shows the Defendants paid him $611.77 for 66.32 hours at $10.30 an hour.  It also shows they deducted 2.26 hours for the break. The time card for that period Exhibit E, shows the Plaintiff worked about 77.41 hours for that pay period.  On the bottom of the card the Defendant hand wrote 14 x $10.30 and 145, the Plaintiff regular rate of pay.  A close examination of the time card shows that Plaintiff worked around 14 hours of overtime, give or take a few minutes.  The 145 represents the cash amount the Plaintiff allegedly received.  Thus the Defendants attempted to pay the Plaintiff his overtime pay at the regular rate of pay.

Based upon the records provided to us by the Defendants, the Plaintiffs' best day at trial would result in approximately $488,000 in damages. This assumes that every employee work 14 hours of overtime per pay period.  In this case the Plaintiffs will net a little more than half of their best day at trial.

Finally, Plaintiffs' counsel has been litigating wage and hour cases primarily for low wage earners working in restaurants, construction and janitorial industry for years.  A seven figure judgment against a small tortilla factory could probably result in bankruptcy.   Why push the interest and attorney's fees to this level?  Plaintiff's counsel has a file folder with the businesses that have declared bankruptcy he has filed wage and hour cases against.  It is useful sometimes in convincing folks to think realistically. In the last case Plaintiff's counsel tried in the federal court Martinez vs Letech 14-CV-02945 Plaintiff won $29,866.67 Docket

number 40 and the court awarded Plaintiff's counsel $54,939.37 in attorney's fees.   Following

the trial the Defendant promptly declared bankruptcy.  In re Trung Q Le 16-cv-50761.  In

weighing all the factors in this case, Plaintiff's counsel asserts the settlement is a fair and

reasonable resolution of this case.

THE COURT SHOULD GRANT CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS

Class certification requires that: (1) the class be so numerous that joinder of all

members individually is 'impracticable;' (2) there are questions of law or fact common to the

class; (3) the claims or defenses of the class representative must be typical of the claims or

defenses of the class; and (4) the person representing the class must be able fairly and

adequately to protect the interests of all members of the class. Fed. R. Civ. P. 23(a); Staton v.

Boeing, 327 F.3d 938, 953 (9th Cir.2003). In addition to meeting the conditions imposed by

Rule 23(a), the parties seeking class certification must also show that the action is

maintainable under Federal Rule of Civil Procedure 23(b). Here, the parties assert that the

action is maintainable under Rule 23(b)(3) because questions of law or fact common to class

members predominate over any question affecting only individual members, and a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy. Fed. R. Civ. P. 23(b); Hanlon, 150 F.3d at 1022.

Numerosity exists because there are approximately 68 members of the class.

"Generally speaking, courts will find that the 'numerosity' requirement has been satisfied

when the class comprises 40 or more members and will find that it has not been satisfied

when the class comprises 21 or fewer." [Ansari v. New York Univ. (SD NY 1998) 179 FRD 112,

114 (emphasis added); also see Consolidated Rail Corp. v. Town of Hyde Park (2nd Cir. 1995)

47 F3d 473, 483—numerosity presumed at level of 40 members; Miri v. Dillon (ED MI 2013) 292 FRD 454, 461—numerosity satisfied where putative class comprised of 150 members.

Commonality exists in this case. This requirement is met through the existence of a "common contention" that is of such a nature that it is capable of class wide resolution in "one stroke." [Wal-Mart Stores, Inc. v. Dukes (2011) 564 US 338, 350, 131 S.Ct. 2541, 2551] The Plaintiff has alleged violations of wage and hour law that are capable of class-wide resolution. The Defendants' policy towards overtime, paystub violations and 203 penalties are all capable of class wide resolution.

Typicality exists in this case.  The claims of the purported class representative need not be identical to the claims of other class members, but the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." [General Tel. Co. of Southwest v. Falcon, supra, 457 US at 156, 102 S.Ct. at 2370; Wolin v. Jaguar Land Rover North America, LLC (9th Cir. 2010) 617 F3d 1168, 1176]. All four members of the case worked for the Defendants during the Class period.  Their claims are identical to those alleged in the complaint on behalf of the class members.

The class members have been adequately represented in this case.  None of the named class members have a conflict.  The class members have vigorously prosecuted the case, all four participating in the investigation, and mediation of this case.  Class counsel has successfully litigated the following Class Actions in Santa Clara County Superior Court Rosales vs Heavenly Greens 1-cv-119684; Lopez vs Logistics Delivery Solutions 113-cv-249431, Diaz vs Heavenly Greens 16-cv295143, Cooke vs A is for Apple 15-cv-279579 and Ledo vs Prado l7-CV-02393 LHK.  Plaintiffs' counsel has prosecuted 178 wage and hour cases in federal court

and probably another fifty in state court over the past twelve years.

THE COURT SHOULD CONDITIONALLY CERTIFY THE COLLECTIVE ACTION UNDER THE FSLA

Section 216(b) of the FLSA allows employees to represent similarly situated employees in an action against their employer for failure to pay wages owed. 29 U.S.C. § 216(b). But unlike class actions brought under Federal Rule of Procedure 23, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party ...." See id.; Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) "The requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure. All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." Hill v. RL Carriers, Inc., 690 F.Supp.2d 1001, 1009 (N.D.Cal.2010) In other word since the class meets the commonalty standard of a Rule 23 Class, the claims certainly qualify as similar under the FSLA.

THE ATTORNEY'S FEES REQUESTED ARE REASONABLE

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund ... is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). See also Central R.R. & Banking Co. v. Pettus, 113 U.S. 116 (1885) (recognizing common fund doctrines); Staton, 327 F.3d at 967 (same). The Ninth Circuit's benchmark for fees in this context is 25 percent of the gross settlement amount, and courts that depart from the benchmark should indicate their

reasons for doing so. Glass v. UBS Financial Services, Inc., 2007 **WL 221862** (N.D. Cal. Jan. 26, 2007) at 14.

In this case Plaintiff's counsel is requesting an attorney's fee of slightly more than 30%.  It is only two percent more than the bench mark.  Plaintiff's attorneys analyzed several thousand pages of documents and interviewed his clients several times, spoke to other witnesses in the case, participated in a full day mediation and reviewed the district court's judges' decisions and those of other district court judges in Northern California regarding pre-certification of Rule 23 and FSLA claims.  Given that Plaintiffs' counsel has gained the employees a little more than half their best day at court,  thirty percent seems like a modest request.  Plaintiffs' counsel will file their hourly billing with the court in a separate attorney's fee motion with the final approval.

THE NOTICE GIVEN THE CLASS IS ADEQUATE

The proposed Class Notice and proposed method of distribution are appropriate. See Fed. R. Civ. P. 23(c)(2)(B); Churchill Village, L.L.C. v. General Electric, 361 F.3d 566, 575 (9th Cir. 2004); White v. Nat'l Football League, 41 F.3d 402, 408 (8th Cir. 1994).


CONCLUSION

Plaintiff's counsel respectfully requests the court preliminarily approve the class action.

Dated:


_James Dal Bon_

James Dal Bon