UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RODRIGO CAMILO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SEVERO C. OZUNA, et al.,<br><br>Defendants. | Case No.18-cv-02842-VKD<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Re: Dkt. No. 40 |

Plaintiffs Rodrigo Camilo, Alvaro Camilo, Ricardo Sanchez, and Jose Lopez bring this hybrid putative class action and collective class action for alleged wage and hour violations under various provisions of the California Labor Code and the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Defendants are Severo C. Ozuna and the Don Vito Ozuna Food Corporation, a tortilla factory based in Morgan Hill, California.

Presently before the Court is plaintiffs' unopposed motion for preliminary approval of the settlement of this action. The Court held a hearing on the motion on March 19, 2019. Following the hearing, and at the Court's direction, plaintiffs filed supplemental briefing on the matter. Upon consideration of the moving papers, plaintiffs' supplemental submissions, and the arguments of counsel, the Court conditionally certifies a Rule 23 class and FLSA collective class, but otherwise denies plaintiffs' motion without prejudice to filing a renewed motion for preliminary approval of the settlement by June 17, 2019.[1]

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

# I.     BACKGROUND

## A.     Plaintiffs' Allegations

According to the complaint, defendants employed plaintiffs as non-exempt, hourly employees in the tortilla manufacturing and distribution industry. Plaintiffs allege that they worked as production, packaging, and manufacturing laborers whose job duties included preparing, stocking, stacking, lifting, and sorting products and ingredients, as well as filling orders and delivering, distributing, and transporting products. Dkt. No. 1. The record is unclear as to exactly what positions plaintiffs held and what specific duties they performed, except that two of the named plaintiffs, Alvaro and Rodrigo Camilo, now state that their job responsibilities "were to simply make tortillas." Dkt. No. 42 ¶ 4; Dkt. No. 43 ¶ 4.

Plaintiffs claim that they regularly worked over eight hours in one day and more than 40 hours in one week and that defendants failed to pay for all the time plaintiffs actually worked. In their complaint, plaintiffs alleged that they typically worked five to six days per week, for over 12 hours per day, on shifts starting between 3:00 a.m. and 6:00 a.m. and lasting as long as 18 hours. Dkt. No. 1 ¶¶ 23-26. They further allege that they were not always provided legally mandated rest and meal breaks. *Id.* ¶¶ 26, 32. Additionally, defendants reportedly "shaved" work hours from plaintiffs' paychecks on a regular basis, with the result that plaintiffs were not paid minimum wages and were not compensated for all the overtime hours they worked (or, if they were paid, plaintiffs claim that they were compensated for overtime work at the regular rate of pay). *Id.* ¶¶ 27-31. Plaintiffs further claim that defendants provided paystubs that did not include their overtime hours and did not accurately reflect the hours they worked. *Id.* ¶ 33.

Plaintiffs filed this action for themselves and on behalf of a putative class, defined as follows:

> All non-exempt hourly employees who are employed or have been employed by Defendants as production, packaging, and manufacturing laborers in the tortilla-manufacturing and distribution industry [in] California within four (4) years of the filing of this Complaint engaged in tortilla-manufacturing, packaging, and distribution labor through the date of final disposition of this action and who suffered the following:
>
> a. Were not paid overtime wages;

b. Were not paid for all hours worked;

c. Were not paid minimum wages for all hours worked;

d. Were not provided with proper paystubs;

e. Were not provided with all legally mandated rest breaks.

f. Were not provided with all legally mandated lunch breaks.

*Id.* ¶ 37. Additionally, plaintiffs sought to represent the following subclass:

> All non-exempt hourly employees whose employment ended in California within four (4) years of the filing of this Complaint engaged in production, packaging, and manufacturing-related labor for the Defendants as non-exempt production, packaging, and manufacturing laborers through the date of final disposition of this action and who were not fully paid their wages within seventy-two hours of the end of their employment.

*Id.* ¶ 38. The complaint asserts seven claims for relief: (1) failure to pay overtime, FLSA, 29 U.S.C. §§ 207, 216(b), 255(a); (2) failure to pay minimum and overtime wages, Cal. Labor Code §§ 510, 1194, 1197, 1771, 1774; (3) failure to pay wages due and waiting time penalties, Cal. Labor Code §§ 201, 202, 203; (4) failure to provide accurate wage stubs, Cal. Labor Code § 226; (5) failure to provide meal periods or compensation in lieu thereof, Cal. Labor Code §§ 203, 226, 226.7, 512, 1194, (6) failure to provide rest periods or compensation in lieu thereof, Cal. Labor Code §§ 203, 226, 226.7, 1194; and (7) restitution for unfair business practices, Cal. Bus. & Prof. Code § 17200. *Id.* ¶¶ 49-94.

**B.      The Proposed Settlement: Plaintiffs' Original Briefing**

Prior to certification, the parties participated in a full-day private mediation with Hon. George Hernandez (Ret.) and reached a settlement as to plaintiffs' claims and those of all "Class Members," defined in the parties' Joint Stipulation for Class Action Settlement and Release ("Stipulated Settlement") as follows:

> All non-exempt hourly employees who are employed or have been employed by Defendants as all non-exempt hourly employees involved in the tortilla and chip manufacturing process who were employed by Defendants between May 14, 2014 and March 19, 2019 who claim they were not paid all their overtime at the rate of 1.5 times their regular rate of pay, and who claim did not receive their breaks.

Dkt. No. 41 ¶ 4. The Stipulated Settlement does not refer to a subclass of employees who were

not timely paid final wages upon termination.

As suggested by this definition of the class, plaintiffs represented in their original moving papers that the relevant period for both the putative Rule 23 class and the putative FLSA collective class spans the period May 14, 2014 to March 1, 2019. However, plaintiffs acknowledged that the FLSA portion of the Stipulated Settlement excludes the period from November 16, 2014 through November 22, 2016 to account for the time during which the U.S. Department of Labor ("DOL") settled FLSA claims against the defendants. Dkt. No. 40 at ECF 11.

The proposed settlement is non-reversionary and contemplates a release of claims in return for a total payment of $375,000 into a common fund. From that fund, the parties will deduct $112,500 in attorneys' fees, up to $10,000 in litigation expenses, no more than $15,000 for settlement administration costs, and service awards of $5,000 to each named plaintiff. The remaining sum, $217,500, referred to as the "Net Settlement Fund," will then be available for distribution to each "Participating Class Member" based on the number of weeks he or she worked, with 67% of the fund being allocated to Rule 23 class claims and 33% being allocated to those under the FLSA. Dkt. No. 41 ¶¶ 10, 34-37, 40, 42-43, 49.

Defendants agree to fund the settlement in two installments. The first payment of $200,000 is due by July 1, 2019, or 30 days after final approval of the settlement (assuming no objections are asserted and no appeal is filed), whichever is later. *Id*. ¶ 45. The second installment of $175,000 is due by May 1, 2020. Payments will be distributed by CPT Group, the agreed-upon claims administrator, after each installment is paid. *Id*. Payments to each Participating Class Member will be allocated as follows: 20% wages, 40% penalties, and 40% interest. *Id*. ¶ 49.

Any unclaimed funds remaining after the first distribution will be redistributed to Participating Class Members in the second payment. *Id*. ¶ 48. If any Participating Class Member fails to cash his or her second check within 180 days after those checks were mailed to their last known address, then the remainder will be redistributed, as a *cy pres* award, to the Katherine &

George Alexander Community Law Center.[2]  *Id.*

Notice of the proposed settlement will be sent to putative class and collective members,[3] in both English and Spanish.  CPT Group will mail notice to each individual's last known address.  If any mail is returned as undeliverable, CPT Group will use skip trace methods to attempt to locate those members and provide them with notice.  CPT Group will also send reminders to all members 30 days after the initial notice was sent.  Dkt. No. 41 ¶¶ 55, 58.

Plaintiffs assert that, as a result of this settlement, they will obtain for the class a little more than half of the amount of defendants' potential total liability exposure, which they estimate is $488,000.  Dkt. No. 40 at ECF 18.  They contend that this represents a fair compromise of their claims.  For example, they note that they "d[o] not have a strong claim for meal or rest period violations," in view of records indicating that defendants permitted and accounted for breaks.  *Id.* at ECF 17.  However, other than stating that the $488,000 estimate is based on "records provided to [them] by Defendants," and that plaintiffs' calculations "assume[d] that every employee work[ed] 14 hours of overtime per pay period," plaintiffs do not explain how they arrived at the $488,000 figure.  *Id.*

Plaintiffs also originally asserted that there were a total of 68 putative class and collective members, with the group being divided about equally between current and former employees.  Dkt. No. 40 at ECF 17; Dkt. No. 40-1 ¶ 25.  Additionally, plaintiffs stated that most of the workers in question earned between $9 to $11 per hour.  Dkt. No. 40 at ECF 17.  Assuming that every eligible class/collective member participated in the settlement, and based on information that the putative class members worked a total of 4,780 workweeks,[4] plaintiffs originally estimated that

---

[2] Plaintiffs provided no information about the Katherine and George Alexander Law Center in their papers.  However, at the motion hearing, plaintiffs' counsel represented that the Law Center runs a worker's rights clinic and provides services to the Spanish-speaking and immigrant community.  Dkt. No. 47.  Counsel for both sides confirmed that aside from performing some volunteer work in the past, they have no association with the Law Center.  *Id.*

[3] Although plaintiffs' moving papers and the Stipulated Settlement sometimes refer to current and former "Class Member[s]," at the motion hearing, plaintiffs' counsel clarified that plaintiffs actually meant to refer to current and former *employees*.  Dkt. No. 47.

[4] At the motion hearing, defendants stated that they provided plaintiffs with the actual number of workweeks each putative class member worked during the class period.  Dkt. No. 47.

United States District Court
Northern District of California

each member would receive, on average, about $30 per week for every week that the employee worked. Dkt. No. 40 at ECF 17; Dkt. No. 40-1 ¶ 25. Alleging that employees were paid at the regular rate of pay for overtime hours, plaintiffs further estimated that each class/collective member would be paid for "about six hours of overtime at $10.00 an hour, the overtime differential for the minimum wage of $10 per hour." Dkt. No. 40 at ECF 17. Plaintiffs provided no specific information about how they calculated these estimates or what those calculations were based on, except that their counsel averred that he "performed all the calculations contained within the motion based upon the Plaintiff's testimony and the documents provided to [him] by the Plaintiffs and Defendants." Dkt. No. 40-1 ¶ 26. It is unclear what testimony plaintiffs refer to, since both sides stated that no depositions were taken in discovery. Dkt. No. 47. Plaintiffs also acknowledged that some employees who worked no overtime will receive money, and "some who worked more will receive less than they worked." Dkt. No. 40 at ECF 17.

At the motion hearing, the Court raised several concerns about the proposed settlement, including the fact that the parties' submitted Stipulated Settlement was unsigned;[5] the lack of explanation or evidence supporting plaintiffs' estimated $488,000 potential value of the settlement; the lack of an explanation as to the designated allocation of the settlement as between the Rule 23 class claims and those of the FLSA collective class; issues regarding the clarity of the proposed notice to be sent to putative class/collective members; and plaintiffs' claimed attorneys' fees of approximately 30% of the settlement, which exceeds the 25% benchmark used in the Ninth Circuit. Dkt. Nos. 45, 47. The Court ordered supplemental briefing. Dkt. No. 46. Although both sides were given an opportunity to submit further briefing, the Court has received additional papers only from plaintiffs. Dkt. Nos. 48-51.

---

[5] No one has voiced any objection to the Stipulated Settlement, and at the motion hearing, both sides confirmed that they agreed to all of its terms. Plaintiffs suggested that no one signed the document in anticipation that the Court might make changes to the settlement terms. As discussed below, however, in assessing the reasonableness of the settlement, the Court cannot delete, modify, or substitute provisions, and the settlement must stand or fall in its entirety. *Staton v. Boeing Co.*, 327 F.3d 938, 969 (9th Cir. 2003); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014).

### C.  The Proposed Settlement:  Plaintiffs' Supplemental Briefing

Many of the proposed terms of the settlement, as described in plaintiffs' original briefing and as summarized above, remain the same.  In their supplemental briefing, however, plaintiffs now advise that they have reevaluated the claimed damages.  Indeed, plaintiffs' supplemental papers indicate that not only are their present calculations based on different assumptions and data than those underlying their original calculations, the size and composition of the proposed Rule 23 and FLSA collective classes have also changed, as has the relevant class period for the FLSA class.

With respect to the claimed damages, plaintiffs explain that the estimates presented in their original brief were calculated on the assumption that defendants employed 25-35 employees in any given pay period, with a low employee turnover rate.  Dkt. No. 51 at ECF 2.  That assumption apparently was based on numbers extrapolated solely from DOL records.  *Id*.  By contrast, plaintiffs now say their new estimates are based on DOL records, as well as defendants' class list and payroll records.  *Id*.  According to plaintiffs, those records show that defendants employed approximately 30-35 employees per pay period, with a high employee turnover rate.  *Id*.

Additionally, the size and composition of the putative Rule 23 class and FLSA collective class appear to have changed.  As discussed, plaintiffs' original submission suggested that the Rule 23 class and the FLSA collective class, taken together, comprised 68 total members, with the group being about equally divided between former and current employees.  At oral argument, the parties suggested that the response to the proposed notice of settlement would be perhaps as high as 85-90%, in part because at least half of the putative class members were still working for defendants.  By contrast, plaintiffs now say that the putative Rule 23 and FLSA collective classes comprise a total of 128 members, with the vast majority (i.e., approximately 107 members) being former employees, and only 21 members being identified as current employees as of the March 19, 2019 close of the class period.  Dkt. No. 51 at ECF 2; Dkt. No. 51-1.  Whereas the range of wages paid to the plaintiffs and the class/collective members previously was identified as $9 to $11 per hour, plaintiffs now say that, during the class period, defendants actually paid wages ranging from $8 to $14.50 per hour.  Dkt. No. 51 at ECF 4.

United States District Court
Northern District of California

1    Further, it now appears that there are more differences between the putative Rule 23 and

2    FLSA collective classes than plaintiffs originally represented.  The parties' Stipulated Settlement

3    does not distinguish between the putative Rule 23 class and the putative FLSA collective class,

4    and indicates that the relevant period for both classes is the same, i.e., May 14, 2014 to March 29,

5    2019.  Dkt. No. 41 ¶ 4.  However, plaintiffs now acknowledge that due to different limitations

6    periods applicable to their FLSA and California Labor Code claims,[6] the relevant period for the

7    putative FLSA collective class is one year shorter than previously described, i.e., May 14, 2015 to

8    March 19, 2019.  Dkt. No. 51 at ECF 3.  The carve-out period for the prior DOL settlement is now

9    identified as November 22, 2014 to November 19, 2016, rather than November 16, 2014 to

10   November 22, 2016.  Dkt. No. 51 at ECF 3.  Plaintiffs also clarify that the carve-out period

11   accounts for the prior settlement paid to 35 FLSA collective members through the DOL

12   proceedings.  *Id*.; *see also* Dkt. No. 51-1.  Additionally, while plaintiffs previously represented

13   that there were a total of 4,780 workweeks during the class period for both classes, they now say

14   that members of the putative Rule 23 class worked a total of 6,825.29 workweeks, and the relevant

15   number of workweeks for the putative FLSA collective class is 3,918.86.[7]  *Id*.

16       Each plaintiff and putative class/collective member will still be paid according to the

17   number of workweeks they worked (minus any workweeks for which they may have already been

18   paid under the DOL settlement).  But whereas the Stipulated Settlement provides that 67% of the

---

[6] Plaintiffs state that the statute of limitations for their FLSA claim is three years and that the limitations period for their California claims is four years.  Although plaintiffs do not cite authority for the cited limitations periods, an FLSA claim has a standard two-year statute of limitations, but a three-year statute of limitations applies for willful violations.  *See* 29 U.S.C. § 255(a).  As for plaintiffs' state law claims, a three-year limitations period applies, Cal. C.C.P. § 338(a), but the Court assumes that plaintiffs seek recovery going back four years based on the four-year limitations period applicable to claims under Cal. Bus. & Prof. Code § 17200.  *See generally Zhang v. Aicem Group, LLC*, No. 13-cv-01342-KAW, 2014 WL 12678026, at *9 (N.D. Cal., Jan. 28, 2014) (concluding that California's unfair competition law, with a four-year limitations period, permitted the plaintiff to recover unpaid overtime compensation that was otherwise barred by the three-year limitations period applicable to his California Labor Code claims).

[7] According to plaintiffs, members of the putative FLSA collective class worked a total of 5,661.57 workweeks during the class period.  However, for purposes of the present settlement, plaintiffs deducted workweeks to account for the DOL settlement paid to 35 of defendants' employees for the period from November 22, 2014 to November 19, 2016.  Dkt. No. 51 at ECF 3.

available $217,500 Net Settlement Fund would be allocated to California claims and 33% would be reserved for the FLSA claims (with payments constituting 20% wages, 40% penalties, and 40% interest), plaintiffs now say that 40% of the $217,500 fund (i.e., $87,000) will be reserved for wages, with the remaining 60% (i.e., $130,500) to be paid as interest and penalties. Dkt. No. 51 at ECF 2. Of the 40% reserved for wages, the funds will now be allocated evenly between state and federal claims, with 20% of the fund being reserved for the California Labor Code claims and 20% being allocated to the FLSA claims. *Id.*

Accordingly, plaintiffs say that they have now calculated payments in three categories: California wages, FLSA wages and California penalties. Plaintiffs' counsel state that they calculated each category separately, and then added the sums together to arrive at an estimated total settlement payment per employee:

- <u>California wages</u>: To calculate California wages owed under the settlement, plaintiffs' counsel took 20% of the fund reserved for the state law claims (i.e., $43,500) and divided it by the number of California workweeks at issue (6825.29), with the result that California wages will be paid at $6.35 per workweek.[8]

- <u>FLSA wages</u>: To calculate the FLSA wages, plaintiffs' counsel took 20% of the fund reserved for the FLSA claims (i.e., $43,500) and divided it by the relevant number of FLSA workweeks (i.e., 3918.86), with the result that FLSA wages will be paid at a rate of $11.10 per workweek.

- <u>California penalties</u>: Plaintiffs took the $130,500[9] reserved for California penalties and interest and divided it by the 6825.29 workweeks at issue, with the result that California penalties will be paid at a rate of $19.05 per workweek.[10]

Plaintiffs' caveat is that these calculations are estimates and that the final amounts will be

---

[8] According to the Court's calculations, $43,500 divided by 6825.29 yields $6.37.

[9] Although plaintiffs' papers state that $135,000 is to be distributed as payment of penalties and interest (Dkt. No. 51 at ECF 2), that presumably is a typographical error, as 60% of $217,500 is $130,500.

[10] According to the Court's calculations, $130,500 divided by 6825.29 yields $19.12.

calculated by the class administrator. Nevertheless, according to plaintiffs, class members who participate in both the Rule 23 and FLSA settlements will receive, on average, $36.49 per workweek. Dkt. No. 51 at ECF 4-5. Additionally, plaintiffs assert that the average total award per class member is $1,699.22, with a median of $873.32 and a standard deviation of $1,955.00. *Id.* at ECF 5. They anticipate that the largest payment one employee will receive is $8,326.04, and the smallest payment made to an employee will be $15.64. *Id.*

Defendants have not filed any response or objection to plaintiffs' modified proposals.

## II.    DISCUSSION

### A.    Rule 23 Class Certification and FLSA Collective Class Certification

Court approval generally is required for the settlement of both Rule 23 class actions and FLSA collective actions. *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (stating that employees may settle or compromise FLSA claims for unpaid wages only under the supervision of the U.S. Secretary of Labor or with court approval).

Nevertheless, Rule 23 class actions and FLSA collective actions are fundamentally different proceedings. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1112-13 (9th Cir. 2018). In a Rule 23 class action, the members of a certified class are bound by the judgment unless they opt out of the suit. By contrast, in an FLSA collective action, only those claimants who affirmatively opt-in by providing a written consent are bound by the results of the action. *See id.* at 1105. The procedures for certification and approval of settlement for Rule 23 class actions and FLSA collective actions therefore are significantly different. The Court now discusses each in turn.

### B.    Rule 23 Class Certification

The Ninth Circuit has declared that a strong judicial policy favors settlement of Rule 23 class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Where the parties reach a settlement before class certification, however, "courts must peruse the proposed

10

compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Plaintiffs bear the burden of establishing, by a preponderance of the evidence, that class certification is appropriate under Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."). Class certification under Rule 23 requires two steps. First, plaintiffs must satisfy the four prerequisites under Rule 23(a), namely numerosity, commonality, typicality and adequacy of representation. *Id*. at 349. Additionally, plaintiffs must also show that at least one of the bases for certification under Rule 23(b) is met. *Amchem. Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Here, plaintiffs seek certification under Rule 23(b)(3) and therefore must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Rule 23(a) Certification

For purposes of resolving the present motion for settlement, the Court finds that the Rule 23(a) requirements are satisfied.

#### a. Numerosity

Under Rule 23(a), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed number that satisfies the numerosity requirement, "[a]s a general rule, classes of forty or more are considered sufficiently numerous.'" *Kempen v. Matheson Tri-Gas, Inc.*, No. 15-cv-00600-HSG, 2016 WL 4073336, at *5 (N.D. Cal., Aug. 1, 2016) (quoting *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal., 2008)); *see also Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 603 (E.D. Cal. 2015) (same). Here, the numerosity requirement is met. Whether this factor is evaluated under plaintiffs' original or supplemental briefing, all indications are that there are well over 40 putative class members.

### b. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A question is common where "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. However, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted). A single common question is sufficient to satisfy Rule 23(a)(2). *Id.* at 359. Here, the commonality requirement is met because resolution of the class claims depends on common questions of law and fact about the class members' employment with defendants. Although plaintiffs have not identified the particular positions and duties of the putative class members, plaintiffs contend that every class member was subject to the same alleged policies, i.e., "shaved" overtime hours, the payment of overtime work at the regular rate of pay, and the failure to provide meal and rest breaks. And plaintiffs' counsel state that they investigated the claimed wage and hour violations, many of which they say are evidenced by defendants' payroll and timecard records. Dkt. No. 1 ¶ 42; Dkt. No. 41 ¶ 24; Dkt. No. 50 ¶ 5. *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 321 (N.D. Cal. 2013) (concluding that the commonality requirement was satisfied where plaintiffs contended that all non-exempt employees were subject to the same wage and hour policies and practices).

### c. Typicality

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class," and "the test is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotations and citations omitted). The typicality requirement is satisfied where representative claims "are reasonably coextensive with those of absent class members; they

need not be substantially identical." *Staton*, 327 F.3d at 957 (internal quotations and citation omitted). Here, plaintiffs' claims meet the typicality requirement because plaintiffs, like every other class member, worked for defendants as non-exempt hourly employees and claim that they were subject to the same alleged unlawful wage and hour practices. Dkt. No. 1 ¶ 42; Dkt. No. 41 ¶24; Dkt. No. 42 ¶¶ 8-13; Dkt. No. 43 ¶¶ 8-13; Dkt. No. 50 ¶ 5. *See, e.g., Tijero*, 301 F.R.D. at 322 (concluding that the typicality requirement was met where the plaintiffs sought to represent all non-exempt employees that were not properly compensated due to the defendant's policies and practices).

### d. Adequacy of Representation

Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing this factor, the Court addresses two legal issues, i.e., whether the named plaintiffs and their counsel (1) have any conflicts of interest with other class members, and (2) will prosecute the action vigorously on behalf of the class. *Staton*, 327 F.3d at 957. The record does not indicate the presence of any conflicts of interest. No issues have been raised with respect to plaintiffs' counsel's competence, and they each aver that they have been practicing attorneys for nearly 30 years, with considerable experience litigating employment and wage-and-hour matters. Dkt. No. 40-1 ¶¶ 3, 11-14, 16-19; Dkt. No. 50 ¶¶ 1, 10. Counsel state that, to promote economic efficiency in litigating this matter, most discovery was conducted informally and the parties agreed to forego depositions. Nevertheless, plaintiffs' counsel say that they thoroughly investigated the facts and claims through interviews and the exchange of information and documents, including timecard records that purportedly evidence many of the alleged wage and hour violations. All four plaintiffs also reportedly participated in the investigation and mediation of this matter. Dkt. No. 50 ¶¶ 5-8. The Court finds that the adequacy requirement is met.

### 2. Rule 23(b)(3) Certification

Plaintiffs seek to certify the proposed class under Rule 23(b)(3), which requires that "the questions of law or fact common to class member predominate over any questions affecting only individual members" and "that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Based on its own review of the record the Court concludes that the predominance and superiority requirements are met.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotations and citations omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (internal quotations and citations omitted). In the present case, plaintiffs have satisfied the predominance factor because the issues in dispute concern defendants' allegedly unlawful wage and hour policies, which generally apply to all class members. The record suggests that the only individual question is the amount of damages to which each putative class member is entitled. However, individualized damages alone do not defeat Rule 23(b)(3) certification. *Id*; *Leyva v. Medline Indus.*, Inc., 716 F.3d 510, 514 (9th Cir. 2013).

In determining whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," courts consider four nonexclusive factors: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the controversy in the particular forum; and (4) the difficulties likely to be encountered in managing a class action. Fed. R. Civ. P. 23(b)(3). Plaintiffs have met the superiority requirement. Whether evaluated using the numbers provided in plaintiffs' original or supplemental briefing, the record presented indicates that the damages at issue likely are not great enough for individual putative class members to want to litigate separate actions against the defendants. Additionally, the parties confirmed at the motion hearing that they are unaware of any other litigation already commenced by or against the class. Dkt. No. 47. Handling the 128 individual cases in a single class action is a more efficient

14

use of the Court's and parties' resources and the most economical way to resolve common questions about defendants' alleged wage and hour practices with respect to overtime pay and rest and meal breaks. Further, the present forum is appropriate, and there are no obvious difficulties in managing this as a class action.

In sum, for purposes of settlement, provisional certification of a Rule 23 class is appropriate.

### C.   Class Representatives and Class Counsel

Because plaintiffs meet the Rule 23(a) requirements, the Court provisionally appoints Rodrigo Camilo, Alvaro Camilo, Ricardo G. Sanchez and Jose Manuel Lopez as class representatives.

Additionally, when a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). In appointing class counsel, the Court considers:

> (i)   the work counsel has done in identifying or investigating
>       potential claims in the action;
> (ii)  counsel's experience in handling class actions, other complex
>       litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv)  the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Here, plaintiffs' counsel have investigated and litigated this action and have submitted declarations describing their expertise in representing plaintiffs in class action suits, especially in the area of wage and hour violations. Dkt. Nos. 40-1, 50. Nothing in the record suggests that counsel have not and will not continue to vigorously litigate this action. Accordingly, the Court provisionally appoints James Dal Bon of the Law Offices of James Dal Bon and Victoria Booke of Booke & Ajlouny as class counsel for settlement purposes only.

### D.   FLSA Conditional Certification

The FLSA permits an employee to bring a "collective action" on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). Although the FLSA does not define "similarly situated," the Ninth Circuit has held that the statute requires "that party plaintiffs must be alike with regard to some *material* aspect of their litigation. That is, the FLSA requires similarity of the kind that allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the

pooling of resources." *Campbell*, 903 F.3d at 1114 (internal quotations and citation omitted). "If the party plaintiffs' factual or legal similarities *are* material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Id.*

"The limited statutory requirements of a collective action are independent of, and unrelated to, the requirements for class action under Rule 23, and, by omitting most of the requirements in Rule 23 for class certification, necessarily impose a lesser burden." *Id.* at 1112 (internal quotations and citations omitted). Certification of an FLSA collective action generally proceeds in two stages. First, at or around the pleading stage, the plaintiff may move for preliminary certification. Second, after the close of discovery, the employer may move for decertification. *Id.* at 1109-10. Only the first stage is relevant here, as defendants do not oppose plaintiffs' request for conditional certification of the FLSA collective action or the settlement of those claims.

Preliminary certification "refers to the dissemination of notice to putative collective members, conditioned on a preliminary determination that the collective as defined in the complaint satisfies the 'similarly situated' requirement of section 216(b)." *Id.* at 1109 (citation omitted). At this stage, "the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Id.* "The level of consideration is 'lenient'—sometimes articulated as requiring 'substantial allegations,' sometimes as turning on a 'reasonable basis,' but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings." *Id.* (citations omitted). "A grant of preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Id.* "A denial of preliminary certification precludes dissemination of any such notice." *Id.*

Here, plaintiffs claim that based on their own experience, as well as the investigation of their counsel, the FLSA collective members are similarly situated because that group consists of all non-exempt hourly employees who were uniformly subject to the same alleged unlawful wage and hour practices and policies, namely, the failure to pay overtime and to provide required meal and rest breaks. Dkt. No. 1 ¶ 42; Dkt. No. 41 ¶24; Dkt. No. 42 ¶¶ 8-13; Dkt. No. 43 ¶¶ 8-13; Dkt.

No. 50 ¶ 5. Plaintiffs have made a plausible showing that there are "similar issue[s] of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117. The Court therefore grants their request for conditional certification of the FLSA collective action.

### E. Preliminary Settlement Approval

As discussed, Rule 23(e) requires court approval of the settlement of a class action. Fed. R. Civ. P. 23(e). The approval process proceeds in two steps. *Lusby v. Gamestop, Inc.*, 297 F.R.D. 400, 412 (N.D. Cal. 2013). First, the Court conducts a preliminary fairness evaluation. If the Court preliminarily approves the settlement, then notice to the class is disseminated and the Court sets a final hearing for approval of the settlement. *Id.* Ultimately, a settlement should only be approved if it is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether a proposed settlement meets this standard, the Court does not have "the ability to delete, modify, or substitute certain provisions," and "[t]he settlement must stand or fall in its entirety.'" *Staton*, 327 F.3d at 969 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

Courts may preliminarily approve a Rule 23 class action settlement and direct notice to the class if the proposed settlement (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *see also Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014). The Court's evaluation of a settlement reached prior to class certification "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks omitted). Additionally, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Such signs include (1) class counsel's receipt of a disproportionate distribution of the settlement, (2) a "clear sailing" agreement "providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel

17

excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) an arrangement whereby fees that are not awarded are reverted to the defendants, rather than added to the class fund. *Id*.

As discussed above, court approval is also required for settlements of private collective actions under the FLSA. *Lynn's Food Stores, Inc.*, 679 F.2d at 1353. In scrutinizing the settlement for fairness, the court must determine whether the settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id*. at 1355. If the settlement is a reasonable compromise of issues in dispute, the court "may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id*. at 1354.

In the present case, the fact that the parties reached a settlement after the parties conducted an investigation, exchanged discovery of the facts of this case, and participated in a full day of mediation facilitated by a retired judge weighs in favor of granting preliminary settlement approval. *See Noroma v. Home Point Fin. Corp.*, No. 17-cv-07205-HSG, 2019 WL 1589980, at *7 (N.D. Cal., Apr. 12, 2019) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining.") (citation omitted); *Nen Thio*, 14 F. Supp. 3d at 1334 (concluding that a settlement appeared to be the product of serious, informed and non-collusive negotiations where the settlement was reached after a thorough investigation of the facts and settlement negotiations occurred with the assistance of a mediator). Nevertheless, for the reasons discussed below, there are several issues that preclude the preliminary approval of the parties' settlement at this time.

### 1. Allocation of Settlement Payments

There are substantial and unexplained inconsistencies between the terms of the parties' Stipulated Settlement and the settlement terms for which the parties now appear to seek approval. The most obvious differences concern the allocation of the settlement funds and of the payments to be made. As discussed, the parties' Stipulated Settlement contemplates that (1) 67% of the $217,500 settlement fund would be allocated to the California state claims, with the remaining 33% reserved for the FLSA claims and (2) individual payments would comprise 20% wages, 40% penalties, and 40% interest. Dkt. No. 41 ¶ 49. As described in plaintiffs' supplemental briefing,

however, the $217,500 fund will now be allocated equally between the California claims and the FLSA claims (with 20% of the fund, or $43,500, being reserved to each set of claims) and the remaining 60% (i.e., $130,500) to be paid as interest and penalties. Dkt. No. 51 at ECF 2. Although plaintiffs seemed to suggest that the Court could make changes to the parties' Stipulated Settlement, as noted, the Court does not have the ability to do so. *Staton*, 327 F.3d at 969; *Nen Thio*, 14 F. Supp. 3d at 1333.

Plaintiffs did not clearly explain how or why the parties originally agreed to allocate 67% of the Net Settlement Fund to the California state claims and 33% to the FLSA claims. Nor have they explained why they have now changed those allocations or how those proposed modifications are fair. Additionally, plaintiffs' supplemental calculations indicate, without explanation, that the $130,500 reserved for the payment of penalties and interest is really only being allocated to the payment of penalties.

### 2. Treatment of Rule 23 class members and FLSA collective class members

The Stipulated Settlement seems to assume that all individuals covered by the settlement are members of *both* the Rule 23 class and the FLSA collective class, and also appears to contemplate payment only to those individuals who are, in fact, members of both classes. The record presented, however, suggests that the two classes are not one and the same and that the FLSA collective class is smaller than the Rule 23 class. In other words, the Stipulated Settlement does not appear to account for members of the Rule 23 class who are *not* also members of the FLSA collective class.

For example, the Stipulated Settlement seems to require Class Members to submit a claim form in order to receive any payment, even though Rule 23 class members are not obliged to submit a claim form to participate in the settlement. Dkt. No. 41 ¶ 61. Adding to the confusion are the Stipulated Settlement's definitions of the terms "Settlement Class Members" and "Participating Class Member." The term "Settlement Class Members" seems to be defined as all Rule 23 class members who either do not opt out or who timely rescind a request to opt out of the settlement. Dkt. No. 41 ¶ 16 (defining "Settlement Class Members" as "all persons, as defined

herein, who do not submit a Request for Exclusion from the Settlement, or who submit a Request for Exclusion but rescind it in a timely manner.").[11]  The term "Participating Class Member" appears to refer to FLSA collective members who are also "Settlement Class Members."  *Id*. ¶ 11 (defining "Participating Class Member[s]" as "Settlement Class Members who file a valid and timely Claim Form with the Claims Administrator to register their claim for recovery from the Net Settlement Amount pursuant to Section B, below.").  The Stipulated Settlement seems to contemplate that only "Participating Class Members" will be paid a settlement.  *See id.* ¶ 43-44, 46, 48-49, 54,  (providing for distribution and payment of the Net Settlement Fund among "Participating Class Members").  Indeed, the Stipulated Settlement indicates that any Class Member who does not timely opt out of the Rule 23 settlement will automatically be deemed a "Settlement Class Member" who is *not* entitled to recover from the "Net Settlement Amount." *See, e.g. id*. ¶ 67.  Additionally, "Net Settlement Amount" is a term that appears to be used synonymously with "Net Settlement Fund," but which is nevertheless not clearly defined in the Stipulated Settlement.  *Id*. ¶¶ 11, 47, 67, 77.  Other portions of the Stipulated Settlement appear to be internally inconsistent in that they seem to use the term "Settlement Class Members" to refer more generically to members of both the Rule 23 class and the FLSA collective class.  *Id*. ¶¶ 78-79.

### 3.    Carve-Out Period for FLSA Claims

Plaintiffs' supplemental briefing clarifies that the FLSA settlement excludes any claims during the period November 22, 2014 to November 19, 2016 to account for payments made to 35 individuals as part of the DOL proceeding.  Plaintiffs' supplemental spreadsheet, however, indicates that there are other individuals who apparently did not receive a DOL settlement and whose FLSA claims fall entirely within the two-year carved out period.  *See* Dkt. No. 51-1, Employee Nos. 3, 11, 13, 19, 21, 22, 32, 34, 36, 51, 52, 54, 56, 58, 64, 75-78, 90-94, 112, 119.[12]

---

[11] "Request for Exclusion" is not a term that is defined in the Stipulated Settlement.

[12] There may be additional affected individuals, although that is not entirely clear since it appears that the start and end dates of employment may not have been correctly inserted in plaintiffs' spreadsheet.  *See* Dkt. No. 51-1, Employee Nos. 59, 68-69, 82, 84, 95.

Plaintiffs do not explain how or why it may be fair to entirely exclude such claims from the settlement.

Further clarification of the dates of the FLSA carve-out period also may be necessary. Defendants previously advised the Court that resolution of the DOL audit encompassed "payment of overtime wages to 35 employees who worked during the period . . . November 16, 2014 to November 15, 2016." Dkt. No. 37 at 2. Defendants explained that the payments "covered the period from [the] week *ending* November 22, 2014 to [the] week *ending* November 19, 2016." *Id.*. It is not clear whether plaintiffs' supplemental briefing refers to the "week ending" date or to the date that begins the work period covered.

### 4. Scope of the Release

The parties' Stipulated Settlement provides that the agreed-upon release of liability encompasses the following: "all claims and/or causes of action alleged" in the present action "as well as any and all claims, demands, rights, liabilities and/or cause of action of any nature and description whatsoever, known or unknown, in law or in equity, asserted by Plaintiffs on behalf of any Settlement Class Member relating to any compensation allegedly due or earned as a result of their employment with Defendants" and "any other related claims and/or penalties of any nature whatsoever." Dkt. No. 41 ¶ 18.

This release provision appears to be both too narrow and too broad. Insofar as the release is limited to "Settlement Class Member[s]," and for the reasons discussed above, the release may not to cover all individuals covered by the settlement. At the same time, a plain reading of the release terms suggests that class members are giving up not only claims alleged or asserted in the present action, but also "any other related claims and/or penalties of any nature whatsoever." Dkt. No. 41 ¶ 18. The Ninth Circuit has held that "[a] settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (internal quotations omitted). Here, the release language is not so limited and suggests that class members are more broadly releasing claims that are not based on

the identical factual predicate as the present action. Courts have held that "such overbreadth in a proposed release is an obvious deficiency that warrants denying preliminary approval." *Mata v. Manpower, Inc.*, No. 14-cv-03787-LHK, 2016 WL 7406989, at *9 (N.D. Cal., Dec. 22, 2016) (citing cases).

### 5. Defendants' Estimated Exposure

In their original briefing, plaintiffs asserted that if this case were to proceed to trial, then defendants' total estimated exposure would be $488,000. They provided only highly generalized information as to how they calculated that figure, stating that it was based on "records provided to [them] by Defendants," and that plaintiffs' calculations "assume[d] that every employee work[ed] 14 hours of overtime per pay period." Dkt. No. 40 at ECF 18. When probed by the Court at oral argument about the basis for the $488,000 estimate, plaintiffs' counsel stated only that he took the largest estimate of overtime hours per week and then calculated the total wage loss using an Excel spreadsheet. Dkt. No. 47.

In their supplemental briefing, plaintiffs offer no new estimate of defendants' total potential exposure, and the Court cannot reliably discern from the record presented whether plaintiffs' $488,000 is reasonable—and, thus, whether the proposed settlement falls within the range of possible approval. *See Nen Thio*, 14 F. Supp. 3d at 1335 (stating that in evaluating whether a proposed settlement falls within the range of possible approval, "courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer."). This is particularly true where plaintiffs' supplemental briefing includes an apparent significant reevaluation of the claimed damages.

### 6. Attorneys' Fees, Costs, and Administrative Expenses

In plaintiffs' supplemental briefing, one of plaintiffs' attorneys, Victoria Booke, avers that she spent nearly 100 hours working on this matter. Dkt. No. 50 ¶ 10. She states, on information and belief, that her co-counsel, James Dal Bon, worked approximately the same number of hours. *Id*. Because both attorneys worked at a rate of $500 per hour, Ms. Booke states that the time they spent litigating this matter (plus anticipated additional 30 hours going forward) is "fairly close" to the 30% of the settlement counsel request in fees. *Id*. ¶ 11.

Although the Court need not resolve the issue of fees at this preliminary stage (particularly when there are other issues that preclude the approval of settlement at this time), the Court has some concern regarding plaintiffs' request for one-third of the settlement, in light of the fact that the benchmark is 25%. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942. Plaintiffs' counsel should bear this in mind if or when they present a fees motion for final approval.

Additionally, in the event the full amount of fees or litigation costs is not awarded or the sum reserved for administrative costs is not depleted, the parties' Stipulated Settlement does not address what should be done with the excess sums.

### 7.    Service Awards

As discussed, each named plaintiff intends to seek a service award of $5,000. While service awards are permissible, they must also be reasonable. *Staton*, 327 F.3d at 977. Courts must evaluate such awards individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Id.* (internal quotations and citation omitted). Here, each named plaintiff will seek an award that is approximately three times the average $1,699.22 payment they say class/collective members may expect to receive. That might not be an unreasonable ratio, and plaintiffs' counsel has now provided additional information about the plaintiffs' efforts in this case. *See* Dkt. No. 50. However, in view of plaintiffs' assertion that the settlement represents a little more than half of defendants' total potential exposure, and given the range of payments plaintiffs now say that class/collective members will receive (i.e., the lowest payment being $15.64 and the highest being $8,326.04), the Court finds that if or when plaintiffs formally apply for service awards, the Court would benefit from additional discussion of the justification and evidence supporting their request.

### 8.    Other Issues re the Stipulated Settlement

The Stipulated Settlement refers to "Participating OT Class Members," "Hourly Wage Dispute Class," and "Hourly Wage Dispute Class Members," which are terms that are not defined

23

in the stipulation.  Dkt. No. 41 ¶¶ 42, 49.

Additionally, the Stipulated Settlement initially refers to "Individual Settlement Amount" as the "gross amount of money to which each Settlement Class Member[] may be entitled," but then goes on to refer to "Individual Settlement Amount" as the amount to be paid to a "Participating Class Member."  Dkt. No. 41 ¶¶ 9, 46, 49.  For the reasons discussed above, these provisions are ambiguous inasmuch as the Stipulated Settlement seems to distinguish between "Settlement Class Members" and "Participating Class Members" and the payments to be made to each group.

### 9.  Revised Notice of Proposed Class Action Settlement ("Notice")

The Notice (Dkt. No. 48) suggests that all individuals covered by the settlement will receive a payment for the FLSA claims, so long as they timely submit a claim form.  For the reasons discussed above, however, that language is misleading.  Plaintiffs' supplemental filings indicate that some individuals may not receive any payment for their FLSA claims, either because their claims fall entirely within the FLSA carve-out period or because they already received payment for their FLSA claims through the DOL.  The revised Notice may also be confusing in that regard, since there is nothing in the Stipulated Settlement or the Notice that advises class members of the two-year carve-out period.

Section 9 of the Notice does not account for changes to the applicable class periods for the Rule 23 class and the FLSA collective class.

Section 13 of the Notice should read "Do I have to have a lawyer in this case?"

The Notice occasionally refers to Mr. Ozuna as "Servero Ozuna" instead of "Severo Ozuna."

If plaintiffs file an amended motion, they should take care that the Notice is consistent with the settlement proposed for approval and that the Notice clearly explains the relief the settlement provides.

## III.  CONCLUSION

Based on the foregoing, the Court conditionally certifies a Rule 23 class and FLSA collective class, but otherwise denies plaintiffs' motion for preliminary approval of the settlement.

The denial is without prejudice to plaintiffs to file an amended motion for preliminary approval (along with an amended Stipulated Settlement and proposed Notice) by June 17, 2019 that cures the deficiencies outlined in this order.

**IT IS SO ORDERED.**

Dated: May 16, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge