United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RODRIGO CAMILO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SEVERO C. OZUNA, et al.,<br><br>Defendants. | Case No. 18-cv-02842-VKD<br><br>**ORDER RE FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Re: Dkt. Nos. 64, 65 |

## I. BACKGROUND

Plaintiffs Rodrigo Camilo, Alvaro Camilo, Ricardo Sanchez, and Jose Lopez filed this hybrid class action and collective action for alleged wage and hour violations under various provisions of the California Labor Code and the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Defendants are Severo C. Ozuna and the Don Vito Ozuna Food Corporation.

In their complaint, plaintiffs alleged that defendants "shaved" work hours from their paychecks on a regular basis, with the result that plaintiffs were not paid minimum wages and were not compensated for all the overtime hours they worked (or, if they were paid, plaintiffs claim that they were compensated for overtime at the regular rate of pay). Dkt. No. 1 ¶¶ 27-31. Additionally, plaintiffs claimed that defendants did not provide accurate paystubs, and did not permit all legally mandated rest breaks and lunch breaks. *Id*. ¶ 37.

On plaintiffs' initial unopposed motion for preliminary approval of settlement (Dkt. No. 40), the Court conditionally certified a Rule 23 class action and FLSA collective action, designated the named plaintiffs as class representatives, appointed plaintiffs' counsel as class counsel, and reserved judgment on plaintiffs' request for attorneys' fees, costs and expenses, as

well as their request for service awards. Dkt. No. 52. The Court otherwise denied plaintiffs' motion for preliminary approval, without prejudice, and noted several items of particular concern. *Id.*

In October 2019, the Court granted plaintiffs' renewed motion for preliminary approval of the settlement,[1] subject to several corrections being made to the proposed notice of settlement. Dkt. No. 57. Plaintiffs subsequently submitted a revised notice of settlement, which the Court approved on November 1, 2019. Dkt. No. 61.

In sum, the parties have agreed to a non-reversionary settlement for a release of claims in return for a gross settlement amount of $375,000 paid into a common fund, to be distributed as follows:

- $112,500 in attorneys' fees (i.e., 30% of the gross settlement);
- up to $10,000 in litigation expenses;
- no more than $15,000 for settlement administration costs;[2]
- service awards of $5,000 to each named plaintiff, for a total payout of $20,000;
- The remaining sum, $217,500, i.e., the "Net Settlement Fund," is to be distributed to each class member based on the number of weeks he or she worked, with 67% of the fund being allocated to Rule 23 class claims and 33% being allocated to those under the FLSA;
- Unclaimed sums from the $375,000 settlement fund will be given as a *cy pres* award to the Katherine & George Alexander Community Law Center.

Dkt. No. 57-1 ¶¶ 40, 42, 46, 55-57.

Plaintiffs now move for final approval of the settlement, and class counsel move for attorneys' fees, costs and service awards. Defendants do not oppose the motions. Shortly before

---

[1] The renewed motion included a new settlement agreement, which addressed many of the Court's identified concerns, including the scope of the release.

[2] Plaintiffs have not submitted any papers showing the exact costs incurred by the claim administrator, CPT Group. However, a CPT Group representative previously submitted a declaration indicating that its estimated costs for this particular case would be $15,324.63, but that it would do the work for a discounted flat fee of $15,000. Dkt. No. 49 at ECF 24-25.

2

the March 3, 2020 final fairness hearing, the Court directed plaintiffs to supplement their motions with information about the class members' responses, including the number of undeliverable class notices and claim packets, the number of class members who submitted valid claims, the number of class members who elected to opt out of the class, and the number of class members who objected to or commented on the settlement. Dkt. No. 66. Finding that further explanation was necessary, the Court also directed plaintiffs to submit further briefing after the hearing. Dkt. No. 69.

Most notably, plaintiffs' supplemental papers advise the Court for the first time that the class contains 163 members, not 128 class members as previously stated.[3] Dkt. No. 67. Of the 163 notice packets that were sent to class members, 11 packets were returned, and ultimately only one packet was undeliverable with no forwarding address and for which no new address could be found. The class administrator received no requests to be excluded from the Rule 23 Class. And of the 107 class members eligible to join the FLSA collection action, 61 members (i.e., 57%) opted in. The claims administrator further reports that there were seven invalid claim forms—six were duplicate claim form submissions, and one claim form was submitted by an individual who was determined not to be a class member. Dkt. No. 67-1. Plaintiffs and the claims administrator confirm that they have received no objections to the settlement. Dkt. Nos. 67, 67-1. The Court also has received no such objections, and no one appeared at the March 3, 2020 final fairness hearing to state any objection to the proposed settlement.

Upon consideration of the moving papers, plaintiffs' supplemental submissions, and the arguments presented at the final fairness hearing, the Court grants plaintiffs' motion for final approval of the settlement, grants in part class counsel's request for attorneys' fees and costs, and grants the class representatives' request for service awards.

---

[3] Plaintiffs partially explain the disparity by noting that they initially used a class list from defendants that only covered the period from May 14, 2014 to May 14, 2018. Dkt. No. 71. Nevertheless, information about the actual class size apparently was available at the time plaintiffs filed the present motion for final approval of the settlement (*see* Dkt. No. 67-1 ¶4), and it remains unexplained why they continued to represent to the Court in that motion that the class included only 128 members.

3

## II. LEGAL STANDARD

### A. Rule 23 Class Action

Court approval is required for the settlement of Rule 23 class actions. *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). The Ninth Circuit has declared that a strong judicial policy favors settlement of Rule 23 class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, no broad presumption of fairness applies to such settlements. *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). And where the parties reach a settlement before class certification, courts must "employ[] extra caution and more rigorous scrutiny," *id.*, and "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see also In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.").

First the Court must assess whether a class exists. *Staton*, 327 F.3d at 952. Second, the Court must assess whether the proposed settlement is "fundamentally fair, adequate, and reasonable," considering "the settlement taken as a whole, rather than the individual component parts, that must be examined." *Id*. (internal quotations and citation omitted).

### B. FLSA Collective Action

Court approval is also required for settlements of private collective actions under the FLSA. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). In scrutinizing the settlement for fairness, the Court must determine whether the settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id*. at 1355. If the settlement is a reasonable compromise of issues in dispute, the court "may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id*. at 1354.

4

United States District Court
Northern District of California

## III. DISCUSSION

### A. Rule 23 Class Certification

Class certification under Rule 23 requires two steps. First, plaintiffs must satisfy the four prerequisites under Rule 23(a), namely numerosity, commonality, typicality and adequacy of representation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Additionally, plaintiffs must show that at least one of the bases for certification under Rule 23(b) is met. *Amchem. Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Here, plaintiffs seek certification under Rule 23(b)(3) and therefore must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In its prior orders regarding preliminary approval of the settlement, the Court found that the putative class satisfied Rule 23(a)'s numerosity, commonality, typicality and adequacy of representation requirements, as well as Rule 23(b)(3)'s predominance and superiority requirements. Dkt. Nos. 52, 57. Plaintiffs' present motion for final approval does not indicate that there have been any changes that would require the Court to alter its prior analysis or conclusions. Accordingly, the Court concludes that the Rule 23 requirements for class certification have been met and approves for final certification a Rule 23 class of all individuals who are employed or have been employed by defendants as non-exempt hourly employees involved in the tortilla and chip manufacturing process between May 14, 2014 and March 19, 2019 and who allege violations under California law as described in claims two through seven of the Complaint (Dkt. No. 1).

### B. FLSA Collective Action Certification

"The limited statutory requirements of a collective action are independent of, and unrelated to, the requirements for class action under Rule 23, and, by omitting most of the requirements in Rule 23 for class certification, necessarily impose a lesser burden." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1112 (9th Cir. 2018) (internal quotations and citations omitted). Certification of an FLSA collective action generally proceeds in two stages. First, at or around the pleading stage, the plaintiff may move for preliminary certification. Second, after the close of

discovery, the employer may move for decertification. *Id*. at 1109-10.

In its prior order regarding preliminary certification, the Court conditionally certified the FLSA collective action, finding that the FLSA collective members are similarly situated because that group consists of all non-exempt hourly employees who were uniformly subject to the same alleged unlawful wage and hour practices and policies. Dkt. No. 52 at ECF 16-17. The Court finds no basis on the present motion to revisit its prior analysis and conclusion. Accordingly, the Court grants plaintiffs' motion for final certification of the FLSA collection action consisting of all individuals who are employed or who have been employed by defendants as nonexempt hourly employees involved in the tortilla and chip manufacturing process from May 14, 2015 through March 19, 2019 who allege violations under the FLSA as described in claim one of the Complaint (Dkt. No. 1).[4]

### C. Rule 23(c)(2) Notice Requirements

If the Court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The rule governs both the form and content of a proposed notice and requires that the notice "clearly and concisely" state "the nature of the action," the "definition of the class certified," the "class claims, issues, or defenses," information about appearing and opting out, and "the binding effect of a class judgment on members." Fed. R. Civ. P. 23(c)(2)(B). The Ninth Circuit has held "that neither due process nor Rule 23's standard necessarily require actual notice," *SFBSC Mgmt*., 944 F.3d at 1046 n.7, and parties are not required to implement all potential options in every case, *id*. at 1047. The notice "requirement is designed to ensure that class notice procedures comply with the demands of due process" and essentially means that the method of providing notice "'must be such as [a person] desirous of actually informing the absentee might reasonably adopt to accomplish it.'" *Id*. at 1045-46 (quoting *Mullane v. Cent. Hanover Bank & Trust Co*., 338 U.S. 306, 315 (1950)).

---

[4] As provided in the parties' settlement, the FLSA collective action is subject to a carve-out period for those class members who already received payment for the FLSA claims in a prior proceeding before the U.S. Department of Labor. *See* Dkt. No. 57-1 ¶ 10.

6

United States District Court
Northern District of California

In the present case, notice in both English and Spanish languages were mailed to each class member at his or her last known address in defendants' records. For any mail returned as undeliverable, the claims administrator used the National Change of Address database to obtain updated addresses. Each class member was also given a reminder notice. Dkt. No. 57-1 1 ¶ 65; Dkt. No. 67-1. The notice itself clearly advises class members of their options—do nothing or request exclusion (for Rule 23 claims); opt in (for FLSA claims); object to the settlement terms— and also explains the mechanics of the settlement. Additionally, the notice contains information about a website where class members could view posted information about the settlement. Dkt. No. 67-1.

As noted above, of the 163 notice packets sent, 11 were returned as undeliverable, and ultimately only one packet was returned as undeliverable with no forwarding address and for which no new address information could be found. Dkt. No. 67-1. No one has requested exclusion from the Rule 23 Class; 57% of the FLSA collective class members opted into the settlement; and no objections have been received. *Id.* The Court is satisfied that this method of providing notice was reasonably calculated to provide notice to class members and was the best form of notice available under the circumstances. *Cf. SFBSC Mgmt.*, 944 F.3d at 1042, 1046 n.7 (observing that a response rate of 18.5% of the class "seem[ed] low for a scenario in which class members stood to receive hundreds of dollars if they made a claim," and was an indication that class members may not have received adequate notice of the settlement).

### D. Approval of Settlement

Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart v. Dukes*, 564 U.S. 338 (2011). In making that determination, district courts consider several factors, including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* The 2018 amendments to Rule 23 require the Court to consider a similar list of factors before approving a settlement, including whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). This list of factors is not intended to displace any factors currently considered by courts, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendments.

The overall purpose of Rule 23(e) is to ensure that class representatives and their counsel do not obtain a disproportionate benefit at the expense of the unnamed class members, who class counsel have a duty to represent. *SFBSC Mgmt.*, 944 F.3d at 1049. When a settlement is negotiated before formal class certification, the Court must apply "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *In re Bluetooth*, 654 F.3d at 946. Thus, courts must consider whether there are "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Several such signs are: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds";

8

and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id*.

As noted above, in scrutinizing the settlement of private collective actions under the FLSA for fairness, the court must determine whether the settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc.*, 679 F.2d at 1353.

In its prior orders regarding preliminary approval of the settlement, the Court concluded that the relevant factors weighed in favor of settlement. Dkt. Nos. 52, 57. The Court focuses the following discussion on the impact, if any, the increased class size has on the fairness of the settlement. As explained, the Court concludes that the proposed settlement is fair, adequate and reasonable. Additionally, although the following discussion focuses primarily on the Rule 23 fairness considerations, for the same reasons, the Court finds that this is a fair settlement of a bona fide dispute under the FLSA.

### 1. Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

As discussed in the Court's prior orders, although plaintiffs asserted that their potential recovery might have been about $2 million, they acknowledged that defendants' records show that employees regularly took meal and rest breaks, eliminating approximately one third of their claimed damages. Plaintiffs further noted additional hurdles presented by defendants' payment system, which plaintiffs describe as convoluted, and recognized that defendants might be able to prove that class members are owed, at most, only $500,000. Dkt. No. 53 at ECF 7.

Under the settlement, each class member is to receive a *pro rata* share of the net settlement based on the number of qualifying workweeks he or she worked. Based on a 128-member class, plaintiffs previously advised that the average total award per class member would be approximately $1,699.22, with a median of $873.32 and a standard deviation of $1,955.00. They anticipated that the largest payment one employee would receive was $8,326.04, and the smallest payment made to an employee would be $15.64. Dkt. No. 52 at 10; Dkt. No. 51 at ECF 4-5. Based on the 163-member class, including 61 FLSA opt-ins, plaintiffs now report that the highest individual settlement amount is estimated to be $7,548.91, and the average individual settlement

9

amount is estimated to be $1,334.36. Dkt. No. 67-1 ¶ 17.

While the estimated average recovery has decreased somewhat in view of the larger class size, in view of the risks and costs of continued litigation, the immediate awards to class members is preferable. Although plaintiffs might have received more if they proceeded to trial and prevailed on their claims, as discussed above, they also faced a risk that the litigation might result in a recovery substantially smaller than they claimed. This factor weighs in favor of approving the settlement.

### 2. Amount Offered in Settlement

"To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). In assessing this factor, the Court considers the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class; the terms of any proposed award of attorney's fees, including timing of payment; and any agreement made in connection with the proposed settlement. Fed. R. Civ. P. 23(e)(2)(C). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotations and citation omitted).

In the present case, the $375,000 settlement is 75% of defendants' estimated $500,000 potential liability at trial, and the $217,500 Net Settlement Fund is a little less than half (i.e., 44%) of defendants' potential liability. Of the total $375,000 settlement, over half (i.e., 58%) will be distributed on a *pro rata* basis to each class member based on the number of qualifying workweeks he or she worked for defendants. It is not clear that the settlement amount will fully compensate every class member for all hours they worked. But if the settlement is approved, class members will receive compensation relatively soon, as opposed to having to wait for a trial and possible appeal. In their supplemental papers, plaintiffs note that the increase in the estimated class size results in a Rule 23 class payment that is $3 less per workweek for a class of 163 members, than it would have been for a class of 128. Dkt. No. 71. For the FLSA collective

10

action, had all eligible FLSA members opted in, plaintiffs state that the increased class size would have resulted in a payment of approximately $17.25/workweek, as opposed to $12.68/workweek with a smaller class. *Id.* Because 57% of the FLSA collective members actually opted in, however, the parties have agreed that the unclaimed portion of the FLSA net settlement fund (i.e., $19,664.38) will be redistributed proportionally to each of the 61 opt-ins based on their respective qualifying workweeks during the relevant period. As a result, the estimated FLSA recovery is about $23.76/workweek. *Id.*

Viewing the settlement as a whole, and notwithstanding the $3/workweek decrease in the Rule 23 class recovery, the Court finds that the amount offered in settlement is fair. *See, e.g., Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (concluding in a wage/hour class action that the total common fund, before deduction for fees and costs, represented between 11% and 27% of plaintiffs' total potential recovery and was fair).

### 3. The Extent of Discovery Completed and the Stage of the Proceedings

The parties settled relatively early in these proceedings, with little or no substantive litigation, after a day-long mediation with a neutral mediator. In plaintiffs' prior motions for preliminary approval, they indicated that while the parties agreed to forego depositions,[5] they did exchange information informally. Class counsel aver that they spent time reviewing and analyzing thousands of time sheets and other payroll records. Dkt. Nos. 64-5, 65-2. The apparent lack of formal discovery, by itself, is not a bar to settlement inasmuch as the there is no indication that plaintiffs were inadequately prepared for the settlement discussions. *See Linney*, 151 F.3d at 1239 ("In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement.") (citation omitted).

### 4. The Experience and Views of Counsel

Class counsel state that they each have been practicing law for about 30 years, with

---

[5] In the present motion, plaintiffs now state that they were deposed, but other than that bare assertion, nothing in the record indicates that anyone spent any time in depositions. *See* Dkt. No. 64 at ECF 3; Dkt. Nos. 64-1, 64-2, 64-3, 64-4.

11

considerable experience in litigating employment and wage/hour matters. Dkt. Nos. 64-5, 65-2. In prior orders regarding preliminary approval of the settlement, the Court found that class counsel met the adequacy requirement. Dkt. Nos. 52, 57. Class counsel are of the opinion that the proposed settlement is fair and reasonable. Although plaintiffs refer the Court primarily to the settlements in noncomparable securities class actions, they have cited to at least one settlement in another of class counsel's cases by another court in this district. *See Ledo, et al. v. Prado, et al.*, No. 17-cv-02393-LHK, Dkt. No. 51. This factor weighs in favor of settlement.

### 5. The Presence of a Governmental Participant

No government entity is a party to this case, and there is no indication that this matter is subject to the Class Action Fairness Act ("CAFA") notice requirement under 28 U.S.C. § 1715.

### 6. Reaction of Class Members

As discussed above, only one of the 163 notice packets has been returned as undeliverable. Plaintiffs report that no one has requested exclusion from the Rule 23 Class, and 57% of the FLSA collective members have opted in. There is no indication that anyone has objected to the settlement. This factor weighs in favor of settlement. *See Bellinghausen*, 306 F.R.D. at 258 ("Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class settlement actions are favorable to the class members.") (internal quotation marks and citation omitted).

## E. The *Bluetooth* Factors

The Court must scrutinize the settlement to determine whether the settlement was the result of good faith, arms-length negotiations, or whether there are signs of collusion or self-interest. *In re Bluetooth*, 654 F.3d at 946. The third *Bluetooth* sign of potential collusion/self-interest—i.e., whether unclaimed funds revert to defendants—is not an issue here. However, given concerns about class counsel's requested fees (discussed below), the Court finds that there is at least a red flag whether counsel are asking for a disproportionate share of the settlement. And, despite plaintiffs' assertions to the contrary, the settlement contains a clear sailing agreement that

expressly provides that defendants will not oppose class counsel's motion for fees and costs.[6] Dkt. No. 57-1 ¶ 46.

In determining whether class counsel are requesting a disproportionate share of the settlement, courts compare the actual payout to the class with the fees requested by class counsel. *Bellinghausen*, 306 F.R.D. at 258. Here, the total payment to the class is $217,500. Class counsel's request for $112,500 in fees is 30% of the total settlement fund and about 52% of the total payment to the class. Counsel acknowledge that the requested sum is higher than their lodestar. As for the clear sailing agreement, such agreements are not prohibited, but they do impose a heightened duty on the Court to "'scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested.'" *SFBSC Mgmt.*, 944 F.3d at 1051 (quoting *In re Bluetooth*, 654 F.3d at 948)).

On the present record, the Court is not prepared to say that class counsel's requested fees are the product of collusion or self-interest. As discussed, the settlement adequately satisfies the Rule 23 and FLSA class members' claims, indicated at least in part by the lack of objections. While the participation of a neutral mediator is not, by itself, dispositive of whether the settlement is fair, adequate and reasonable, it nonetheless is "a factor weighing in favor of a finding of non-collusiveness." *In re Bluetooth*, 654 F.3d at 948. Accordingly, final approval of the settlement is appropriate.

Even so, for the reasons discussed below, in seeking 30% of the global settlement fund in fees, class counsel have not persuasively demonstrated that this matter warrants a departure from the 25% benchmark recognized in the Ninth Circuit.

---

[6] In their fees motion, class counsel mistakenly assert that there is no clear sailing agreement. Dkt. No. 65 at ECF 5. A clear sailing agreement is "an arrangement where [a] defendant will not object to a certain fee request by class counsel." *SFBSC Mgmt.*, 944 F.3d at 1049 (internal quotations and citation omitted); *see also In re Bluetooth*, 654 F.3d at 947 (observing that the parties' settlement included a "'clear sailing agreement' in which defendants agreed not to object to an award of attorneys' fees up to eight times the monetary *cy pres* relief afforded the class.").

13

### F. Motion for Attorneys' Fees and Costs and Service Awards

#### 1. Attorneys' Fees

"The Ninth Circuit has approved two methods of determining attorneys' fees in cases where, as here, the amount of the attorneys' fee award is taken from the common fund set aside for the entire settlement: the 'percentage of the fund' method and the 'lodestar' method." *Bellinghausen*, 306 F.R.D. at 259-260 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)). "The district court retains discretion in common fund cases to choose either method." *Id.* "Because the benefit to the class is easily quantified in common-fund settlements, [the Ninth Circuit has] allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942. "Under either approach, '[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion.'" *Bellinghausen*, 306 F.R.D. at 260 (quoting *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir.2002)).

Here, class counsel's request for fees of $112,500 is 30% of the $375,000 global settlement fund. In the Ninth Circuit, for common fund settlements, courts typically apply a 25% benchmark for a reasonable fee award, but may, with an "adequate explanation," depart from that benchmark based on "special circumstances." *In re Bluetooth*, 654 F.3d at 942. When deciding whether such a departure is appropriate, "courts may consider the result achieved, the risk involved in the litigation, the skill required and quality of work by counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar crosscheck." *Bellinghausen*, 306 F.R.D. at 260 (internal quotations and citation omitted).

An award at the 25% benchmark in the present matter amounts to $93,750. In arguing for an upward departure, class counsel point out that they represented the class on a contingency basis; this case "had some complexity" in that it involves a dual Rule 23 class and FLSA collective action; plaintiffs speak Spanish, and class counsel was required to translate complex legal theories for them; and defendants reportedly had a convoluted payment method that took some time to understand. Dkt. No. 65 at ECF 3-4.

14

1       The Court acknowledges the need to encourage attorneys to take contingency-fee cases for plaintiffs who otherwise could not afford to pay hourly fees. Additionally, the Court notes the willingness of class counsel to accept the risk, in the event of protracted litigation, of delayed payment or non-payment for work performed. And as discussed above, the results achieved in this litigation are good, and there is no indication that any class member has objected. Even so, "in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage," and "the district court must assume the role of fiduciary for the class plaintiffs." *Vizcaino*, 290 F.3d at 1052. "Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper." *Id*.

      The present litigation is a straight-forward matter that settled within six months after the complaint was filed, with little or no formal discovery or substantive litigation. *See* Dkt. No. 60. Indeed, the majority of this litigation has focused on plaintiffs' unopposed efforts to obtain approval for the settlement. And although class counsel have considerable experience in wage/hour litigation, they did not display a degree of skill warranting an upward adjustment to the 25% benchmark. Plaintiffs' initial motion for preliminary approval of the settlement was denied, and at least some of the delay in this matter is attributable to briefing and arguments that were unclear or inadequate, often requiring supplementation. *See, e.g.,* Dkt. Nos. 46, 52, 59, 66, 69. Although the Court suggested that plaintiffs update their present motion papers with statistics about the notices and class members' responses by January 28, 2020 when plaintiffs indicated that they likely would have that information (Dkt. Nos. 62, 63), plaintiffs did not do so until shortly before the final fairness hearing, and only after the Court issued a second order directing them to provide that information. Dkt. Nos. 66, 67. And as noted above, plaintiffs' counsel have presented the Court with inconsistent statements about facts as basic as whether their clients were deposed in this litigation. Dkt. No. 47, Dkt. No. 52 at ECF 6, 13; Dkt. No. 64 at ECF 3.

      Plaintiffs have not provided the Court with much information regarding awards in similar cases, choosing instead to focus on large class actions concerning securities violations or violations of telephone communications laws. *See* Dkt. No. 64 at ECF 8. Although they identify several class actions they say they successfully litigated in state court, and allude to a number of

15

actions they have litigated in federal court, class counsel do not explain how those cases compare to the present one, if at all. *Id.* at ECF 7. As noted above, however, plaintiffs have cited to at least one wage/hour class action in which another judge in this district approved the settlement and awarded plaintiffs' counsel 25% of the settlement as fees. *See Ledo, et al. v. Prado, et al.*, No. 17-cv-02393-LHK, Dkt. No. 51.

An award of 25% of the settlement fund is also confirmed by a lodestar cross-check. In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino*, 290 F.3d at 1050. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942. "Where [an attorney's] investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Vizcaino*, 290 F.3d at 1050. "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Id.* "Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.*

Here, class counsel acknowledge that their lodestar—even accounting for a deduction of time attorney Dal Bon spent on plaintiffs' renewed motion for preliminary approval of the settlement—is less than 30% of the settlement fund, and that their requested fees include what they say is a modest multiplier of 1.375. Dkt. No. 65 at ECF 4-5. Class counsel have not adequately supported their lodestar calculations, which appear to be based on rates of $500/hour for Ms. Booke and $550/hour for Mr. Dal Bon.[7] Nevertheless, even fully crediting counsel's

---

[7] Neither attorney has cited to decisions in this district supporting such rates, save for a cursory one-paragraph order in another matter in which Mr. Dal Bon's requested fees of $577/hour were granted as unopposed. *See Martinez v. Le, et al.*, No. 14-cv-02945-PSG, No. 51. Other than citations to state court decisions in which judges have awarded fees at the lower rate of $430/hour

16

lodestar figures,[8] including 15 hours of additional unsubstantiated time Ms. Booke estimated that she would spend on the settlement and claims administrative process, their lodestar is $104,182, or approximately 28% of the settlement fund.[9] For the reasons discussed above, other than the good results achieved for the class members relatively early in the case, plaintiffs have failed to demonstrate special circumstances justifying a fee award of 30% of the settlement. Accordingly, the Court will instead award counsel fees of 25% of the settlement, i.e., $93,750.

### 2. Costs

The settlement agreement contemplates costs of up to $10,000. Class counsel request costs of $7,776.63. Dkt. No. 65-1 ¶ 11. That sum includes $2,312.50 for work by Ms. Booke's paralegal, who is a law school graduate and bills at $125/hour. Notwithstanding the Court's noted concerns about the clerical nature of some of the paralegal's work,[10] the requested costs are supported by Ms. Booke's timesheet. Dkt. No. 65-1. The Court grants the request for $7,776.63

---

and $450/hour, Ms. Booke relies on the Laffey Matrix, which courts have criticized as being of little significance in this district. *See Bellinghausen*, 306 F.R.D. at 263 (citing cases).

Additionally, counsel's submitted timesheet entries are vague, hampering the Court's ability to properly assess whether the claimed hours were reasonably incurred, although some entries give the Court cause for concern. For example, attorney Booke's timesheet claims 1.0 hour for time spent at a court hearing on August 13, 2018 (Dkt No. 65-1), but the docket reflects that there was no hearing held in this matter on that date. Additionally, counsel's timesheets indicate that both Ms. Booke and Mr. Dal Bon spent time preparing plaintiffs' initial motion for preliminary approval of the settlement, but it is not clear to what extent any of their efforts may have been duplicated. Further, it appears that at least some of the time claimed by Ms. Booke's paralegal was spent on purely clerical tasks, which generally are not recoverable in a motion for attorneys' fees and should instead be subsumed in normal overhead costs. *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) ("filing, transcript, and document organization time was clerical in nature and should have been subsumed in firm overhead rather than billed at paralegal rates"); *LaToya A. v. San Francisco Unified Sch. Dist.*, No. 3:15-cv-04311 LB, 2016 WL 344558, at *9 (N.D. Cal. Jan. 28, 2016) (same); *Yates v. Vishal Corp.*, No. 11-cv-00643-JCS, 2014 WL 572528, at *5 (N.D. Cal. Feb. 4, 2014) (same).

[8] This Court has found some decisions indicating that counsel's proffered hourly rates fall within a range of rates approved by other courts in this district. *See, e.g., Noroma v. Home Point Fin. Corp.*, No. 17-cv-07205-HSG, 2019 WL 5788658, at *9 (N.D. Cal. Nov. 6, 2019); *Padron v. Golden State Phone & Wireless*, No. 16-cv-04076-BLF, 2018 WL 2234550, at *6 (N.D. Cal. May 16, 2018).

[9] That is, 130 hours at $500/hour for Ms. Booke's work and $550/hour for 71.24 hours of Mr. Dal Bon's work.

[10] Ms. Booke has not cited cases supporting her paralegal's rate. Courts in this district, however, apparently have approved paralegal rates up to $175/hour. *See Padron*, 2018 WL 2234550 at *6.

in costs.

### 3. Service Awards

Each named plaintiff seeks a service award of $5,000. Courts in this district have recognized that a $5,000 service award is "presumptively reasonable." *See, e.g., Bellinghausen*, 306 F.R.D. at 266-67 (citing cases). Here, each plaintiff avers that he is the sole provider for his family. While their declarations are vague as to exactly how much time they spent on this case, it appears that each plaintiff may have lost up to several days of work to meet with class counsel and to attend the mediation. Additionally, at least two plaintiffs state that they incurred significant travel costs, namely Mr. Lopez (who says he has lived in Sacramento since 2015) and Mr. Sanchez who says he was required to make at least one 70-mile round trip. Dkt. Nos. 64-1, 64-2, 64-3, 64-4. The Court grants the requested service awards of $5,000 for each plaintiff.

## IV. CONCLUSION

Based on the foregoing, plaintiffs' motion for final approval of the settlement is granted. In addition, the Court grants in part the motion for attorneys' fees, costs and service awards. Specifically, the Court awards $93,750 in attorneys' fees, $7,776.63 in litigation costs; $15,000 to the claims administrator, CPT Group, Inc.; and $5,000 each to Rodrigo Camilo, Alvaro Camilo, Ricardo Sanchez, and Jose Lopez as service awards.

The parties are directed to file a stipulation for dismissal promptly upon fulfillment of the terms of the approved settlement.

**IT IS SO ORDERED.**

Dated: April 1, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge

18